## Ellis Howell et al., Executors, etc.

### v.

### Charles Edmonds.

1. Practice—*when it is too late to raise a certain objection.* This court has repeatedly said, that an objection of such a nature, that it might have been removed by further evidence, if not taken and persisted in on the trial of the cause, cannot be raised in the appellate court.

2. Statute of frauds—*consideration—relative to judgment in a particular case——not within the statute.* A gave to B, his brother, a note, the consideration for which was, to reimburse B, to the extent of one half of the expenses incurred by him in maintaining their indigent parents, for a period of nearly thirty years, and afterwards gave to him a warrant of attorney, authorizing a confession of judgment to be made for the amount specified in the note, which was done: *Held,* in a suit against the estate of A, to recover the amount of the judgment, it appearing, that at the time of the transaction, there was no creditor who could have been defrauded thereby, and that no such intent actuated the parties, the debt was *bona fide,* and did not come within the statute of frauds.

3. Same—*no objection that there were other creditors—the debt being bona fide.* Nor would it be any objection, that there were other creditors of A, at the time the judgment was so confessed; the debt being a *bona fide* one, he had a right to prefer B, to any of the others.

4. Judgment—*effect of releasing lien of—upon the realty, as to bona fide purchasers.* And, in such case, it would not matter, that execution had not issued on the judgment, or its lien, had, by agreement between the parties, entered of record, been removed, as against *bona fide* purchasers. Notwithstanding this, the judgment remained a qualified lien.

5. Same—*lapse of fifteen years after rendition of—no presumption of payment.* Nor does the fact, that fifteen years have elapsed since the rendition of the judgment, of itself, furnish any presumption that it has been paid.

6. Fraud—*its effect.* Neither the parties to a fraudulent transaction, nor their executors, can avoid the act, by reason of the fraud.

Writ of Error to the Circuit Court of Clark County; the Hon. Hiram B. Decius, Judge, presiding.

The facts in the case are fully stated in the opinion.

Mr. JOHN SCHOLFIELD, for the plaintiffs in error.

Mr. O. B. FICKLIN, for the defendant in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The better feelings of our nature have been much exercised by a perusal of this record, and in considering the facts stated in it, showing as they do, such a striking instance of fraternal affection, confidence and devotion as is rarely found in the dull annals of a court of justice.

Two brothers, natives of Massachusetts, children of the same parents, became separated. Their parents were then aged and infirm. The elder brother, from some cause unexplained, came to this State, changed his name from that of Abijah Edmonds, to Charles Johnston, became, under that name, eminent as a physician, and the possessor of a handsome property. He had left to his younger brother, Charles Edmonds, the defendant in error here, the entire support of their parents, who cheerfully afforded it, with an occasional small remittance of a few dollars from " Charles Johnston," for near thirty years. Charles Edmonds appears to be the only person cognizant of the whereabouts of his runaway brother, and of his change of name, which, in his deep love for the brother, he had adopted as his own. Under his new name, a correspondence was carried on for some years with Charles Edmonds, from which it would - appear Charles Johnston had signified his wish to reimburse his younger brother for a portion of the expenses incurred in supporting their aged parents ; that, though, apparently, a fugitive from his home, renouncing his family name, he, at all times, kindly remembered those who gave him being, and the dear brother who had sustained them in their declining years. Prompted by these feelings, he allowed his brother to state an account of his expenditures through those long years, and cheerfully consented that he should be charged

with one-half the burthen.   This, in dollars, was put in a note, executed by Charles Johnston, to his brother Charles Edmonds, and amounted to three thousand one hundred and twenty-nine dollars and fifty-nine cents, at its date, to-wit: May 1, 1850.

Charles Johnston was then practicing as a physician, keeping a store, carrying on a farm, and in business generally, at York, in Clark county, in this State.   He had become somewhat embarrassed about this time, and before, and, amid all his involvements and the pecuniary difficulties which then environed him, the claims of his dear, absent brother occupied his mind, and imperatively seemed to demand his utmost care. Accordingly, when the difficulties thickened around him, he was anxious to devise some plan, " come what would," so that his brother should suffer no loss.   Mortgages of real and personal estate were talked of and abandoned, until, finally, on the fifteenth of April, 1852, a confession of judgment for the amount of the note and interest, so executed to his brother, was deemed the surest means by which the desired object could be reached, it not being in the contemplation of either party, that the judgment should be enforced during the lifetime of Charles Johnston, and this accounts for the character of the correspondence of the parties for so many years, in which no allusion was made by either, to this judgment.   The judgment was entered under a warrant of attorney, executed by Charles Johnston, at the April term, 1862, and the note filed with the declaration, the plaintiff appearing by his attorney, T. R. Young.

As early as 1850, Charles Johnston, then unmarried, as we infer from the proof in the cause, had suggested to his brother, by letter, that he was acquiring property, and should remember him in his will ; that he and his, would become the owners of all his acquisitions.   But he married, and in 1854, was not much troubled about his liabilities, and continued to hint that his brother would be his devisee, his wife bearing no child to him.   In his letter of February 1, 1854, Charles Edmonds says,

"in all candor and frankness, that should I survive you, let my situation be what it may, I have no disposition to have what you might leave, appropriated in any other manner than what would be agreeable to your wishes, and should you leave a widow, she should be properly cared for. I do not consider I have any claim upon your estate, other than what your generosity would allow, as a portion of the expenses I have been put to, for some thirty years past, in maintaining and making comfortable, so far as I could, our parents. This amount, I never doubted, you would, at your earliest convenience, cheerfully bestow."

This voluntary obligation of Charles Johnston, was then in judgment, in the Clark Circuit Court, which, judging from the tenor of this letter, was the sole reliance of Charles Edmonds, for a reimbursement of a portion of those expenses, disclaiming any testamentary provision. The judgment was sufficient, to be paid whenever it might suit the perfect convenience of his brother to pay it. This appears in all the correspondence in the record, and it further appears, such was the confidence these brothers reposed in each other, such was the sympathy between them, that, to Charles Johnston, notwithstanding this judgment, Charles Edmonds had given *carte blanche*, to dispose of all the property incumbered by it, without hesitation, should it accommodate him so to do ; that his brother, Charles Edmonds, was the last person to be considered, when the brother, Charles Johnston, was in difficulty.

Accordingly, we find, on the 6th of April, 1855, at the instance of Charles Johnston, Charles Edmonds executed a writing, authorizing T. R. Young, Nathan Willard, or any attorney in this State, to enter satisfaction, in his name, for any judgment in his favor, against Charles Johnston, or on any mortgage that might appear on the records of the Circuit Court of Clark County, State of Illinois.

Thus we see, pervading the whole record, an anxious desire, on the part of Charles Edmonds, not to harrass his brother,

but to yield up, at his suggestion, this hold he had upon him.

It appears, from the testimony of Mr. Young, that Charles Johnston brought the note and warrant of attorney to him, and told him, at the time, the consideration of the note was the support of his parents. He said he ought to pay it, and he did it cheerfully; that he was glad of the chance to do it, and when speaking to him of the authority he had received to enter satisfaction of the judgment, he said he did not want the judgment entirely released; that no part of the judgment had been paid; that he only wanted to use his property in paying his debts; he wanted his brother secure, all the time. He said, repeatedly, he did not want the judgment released. At the time Charles Johnston said the consideration of the note was the support of his parents, he said that Charles Edmonds was his half brother, so anxious was he, up to that time, to conceal a secret, which his brother, Charles Edmonds, never did reveal.

Mr. Young accommodated his action to the wishes of Charles Johnston, writing, on the margin of the record, this: "By order of the plaintiff, this judgment is no longer a lien on the real estate of the defendant, against any *bona fide* purchaser. May 1st, 1855." The judgment still remained a qualified lien.

The form of this authority to Mr. Young was furnished by Charles Johnston to his brother, Charles Edmonds, and by him sent to Mr. Young. In the letter transmitting it, Charles Johnston says, "as I am consolidating my affairs, it is necessary that the record should be perfectly clear, that in the exchange or disposition of my property, there may be no impediment. When we see each other, we will, in justice, arrange all. My will is made, and all will be yours, after making provision for Mary," (his wife).

An inspection of the will, which was open to either party, by agreement, shows it was made July 25, 1862; the time of death is nowhere stated. By the will, ample provision is

made for the children of his wife, by a former husband, and for some of her relatives, and to his brother, whom he names, still desiring to conceal his secret, " Charles Edmond Johnston, now residing in the city of Boston," provided he should survive testator's wife, one-quarter of the money arising from the sale of his real and personal property, and any moneys otherwise arising from mortgages, but made no other devise or bequest to him.

The testator dying, his will was duly proved, and letters testamentary issued to the plaintiffs in error.

This claim, as evidenced by this judgment, in the Clark Circuit Court, in August, 1852, was presented by Charles Edmonds, to the County Court of Clark County, and there allowed, as a valid and subsisting claim, against the estate of Charles Johnston. From this order, the executors appealed to the circuit court, and, on trial before that court, without a jury, a judgment was rendered for Charles Edmonds, against the estate, for seven thousand one hundred and five dollars and eighty-eight cents, being the amount of the original judgment and interest, to be paid in due course of administration.

To reverse this judgment, the executors bring the record here, by writ of error, and assign this finding as error.

The first point they make is, that it was error to permit the record of the original judgment to be read in evidence, for the reason, as there alleged, that the judgment was illegal and void, and because the same had been fully paid and satisfied.

These were the objections then ; they now say, that the court erred in permitting the judgment against Johnston to be read in evidence, without having first read in evidence the declaration, and the power of attorney by virtue of which it was confessed.

Had this specific objection been made in the circuit court, it was quite easy for the plaintiff to have removed it, by the production of those papers from the files of the court. It is now too late to make the objection, as this court has repeatedly

determined. *Harmon* v. *Thornton,* 2 Scam., 351; *President and Trustees* v. *Holland,* 19 Ill., 271; *Gillespie* v. *Smith,* 29 ib., 473; *Sergeant* v. *Kellogg,* 5 Gilm., 273; *Swift* v. *Whitney,* 20 Ill., 144; *Buntain* v. *Bailey,* 27 ib., 410.

The next point made is, that the judgment was originally obtained to the intent and purpose to delay, hinder or defraud creditors, within the meaning of the statute of frauds and perjuries.

This point is set at rest, by the consideration there is no proof of any creditor, then in existence, who could have been defrauded, and none, whatever, that such was the intent.     The *factum* does not establish the intent.     Charles Edmonds was a *bona fide* creditor of Charles Johnston, made so, if you please, by a voluntary yielding, on the part of Charles Johnston, to a high moral and natural obligation, to share with his brother the expenses of supporting their indigent parents, for thirty years, all of which was done by Charles Edmonds.     If Charles Johnston had other creditors at this time, he had a right to prefer his brother Charles to any of them, provided the debt was *bona fide,* and who can doubt it?    We do not.    It matters not, that no execution was issued upon the judgment, or its lien removed by agreement, as to *bona fide* purchasers, the judgment remained, notwithstanding.

The next point is, that the judgment has been paid.

The plaintiffs in error admit that it does not appear when or how this was done, but insist the lapse of time furnishes a presumption it was paid.

Fifteen years afford no such presumption, and the facts in the case furnish strong presumptive evidence, at least, that the judgment was not to be paid until after the death of the debtor, he, in the meantime, to exercise such control over it as might be beneficial to himself.

The fact that Charles Edmonds sent his only son, Charles, to his brother, not known to be such, to the son, should not be tortured to the prejudice of the defendant in error.     It was

done at the solicitation of the voluntary exile, who, deprived of the sight of those he held most dear, his younger brother especially, his heart yearned to have some one of his own blood and lineage near him, on whom he might lavish a portion of that affection for his kindred, with which his heart was charged. This was a wayward boy, and committing him to the care of his distant and exiled brother, whom he had not seen for thirty years, furnishes evidence, only, of the extent of his strong and enduring affection for him.

We see nothing in the record to implicate any of these parties in a fraud. If there was a fraud, neither Charles Johnston, if living, nor his executor, since his death, could set it up, to defeat a recovery. No question is made as to the rights of creditors.

The record shows the widow and her relatives are well provided for, by the will, and that there is property sufficient, after satisfying this judgment, to leave them comfortable.

*Judgment affirmed.*