WILLIAM H. VIRGIE *vs.* SARAH A. STETSON.

Lincoln.    Opinion May 27, 1882.

*Evidence.    Practice.*

When documentary evidence is offered, each piece should be presented by itself to the presiding justice, exhibited if desired to the opposing counsel, identified by the court or stenographer with suitable marks, and, if objected to, its genuineness established by testimony.

A bundle of papers was offered in testimony, and an objection was raised to the reception of any bundles and sustained. *Held,* that the objection was properly sustained.

When offering files of papers or manuscript volumes in evidence, it is the duty of counsel to select the parts of such documents which they claim to be admissible, and point them out to the opposite counsel and the court, so that it may be known in the first place whether the opposite party will object, and if he does, that the court may pass upon the objection without waste of time.

Conversation between witnesses for one party not held in the presence of the opposing party is not admissible in evidence in behalf of the party offering the witness.

Where a witness testified to statements made by a party in his hearing, *Held*, It was not error to exclude testimony showing that such witness was not permitted to mention the name of the opposing party in the house of the party making the statement, or to show that such witness was not allowed in the store, the witness having testified that he was employed about the house and store, when neither fact would tend to contradict the witness' testimony on any material point.

Whether or not the presiding justice will call the attention of the jury to any particular piece of testimony, is a matter which rests in his discretion. The exercise of that discretion is not the subject of exceptions.

It is not a proper mode of requesting instructions to ask the presiding justice "to give proper instructions" upon any particular piece of testimony or fact appearing in the case.

ON EXCEPTIONS and motion to set aside the verdict.

Assumpsit for money had and received amounting to thirteen hundred dollars. Also on account annexed for two thousand three hundred and sixty-seven dollars and twenty-nine cents, for three-eighths of the steamer Alice Virgie.

The writ was dated April 7, 1877, and the plea was the general issue.

After the jury had had the case under consideration some hours, late in the evening they were brought into court, when the judge presiding inquired if there was any prospect of an agreement. The inquiry having been answered in the negative, the judge addressed the jury as follows :

"The parties are very anxious that the case should be settled this term. It has been stated by counsel, and you know, therefore, that the case has been before tried. It is not likely that such a case can be better or more ably tried than this case has been at this term ; and it is important for the parties and to your county that there should be an end of it. It is attended with considerable expense to your county, as well as to the parties. They are both anxious that it should be settled.

"You undoubtedly understood me to say in my charge that there are four items sued, and that it would be competent for you to return a verdict for all four, or any one of the four, or more of them.

"That is to say, if you should find that the defendant is liable for three-eighths of the steamer and not for the borrowed money,

it would be competent for you to find a verdict for the plaintiff for that portion of the steamer and not for the items of lent money; or if you find the defendant liable for the lent money or any part of it and not for the steamer, then you may return a verdict for those items; or if you find she is liable on the note and not liable for the other items, then you may return a verdict for the note. I presume you understood that you could find for the plaintiff for any one or all of these items, if the evidence satisfies you it would be just; or that you could find for the defendant if you should find none of the items proved. You undoubtedly understood all that."

*Foreman.* Yes, your honor.

*Court.* By request of counsel of both parties I urge upon your consideration, that one of the most unfortunate results, and one of the most unsatisfactory, is a disagreement. I will give you any further instructions you may desire.

*Foreman.* We would like to know what constitutes a legal agency?

*Court.* If you have any particular difficulty, you will please state as briefly as you can what it is, and I will endeavor to aid you.

*Foreman.* In your charge you used the expression, "A duly authorized agent." Some of the jury are in doubt what constitutes a duly authorized agent, whether a man in a store selling goods as a clerk is an agent, or whether he must have a writing to constitute him an agent.

*Court.* I understand your difficulty, from the statement of your foreman, to be as to what constitutes an agent.

After stating the elements of competency to appoint, the judge proceeded to say:

"The appointment, so far as this transaction was concerned, could be made by word of mouth as well as by writing. Either form would be equally obligatory and would confer an authority. In other words, if she was carrying on a store, and she wanted money to use in that business, she could have gone to Mr. Virgie and hired it herself, or she could appoint another person to go and hire it for her, just as you could employ a neighbor to do an

errand for you to another person, in your behalf. She could appoint her husband as well as any other person.

"Now, the point in controversy here is whether she did appoint and authorize her husband to act for her in procuring this money."

After alluding to the conflict of testimony on this point, the judge directed the jury to weigh the evidence and determine where the truth lay, and then proceeded to say :

"Any fact, which it is necessary to establish in a court of justice, may be established by what is called direct evidence, or it may be inferred from the circumstances and situation of the parties. You will judge here whether the evidence offered is sufficient to satisfy you that she did in fact authorize her husband to act for her in this operation. You may infer it from their relations to each other and other circumstances, which you are satisfied are proved in the case, provided the circumstances are of such a character as to bring conviction to your minds that she did in fact hire the money herself, or authorize her husband to do it for her ; or, as I have been requested by her counsel, Judge Gilbert, to instruct you with reference to the money, she must have authorized her husband before he could act for her, in respect to the purchase of the vessel, or she must have ratified his act afterwards, when done for her.

"It is a maxim of the law of agency, that subsequent ratification is equivalent to previous authority. In other words, if a man should undertake to act in your behalf, as your agent, to do any act for you, to buy for you a barrel of flour, a yoke of oxen, or an interest in a ship, without your authority, still if you knew what his act was, and you had become acquainted with all the circumstances attending it, and you assented to it, and ratified it, then his act would be as obligatory and binding upon you as if you had previously authorized him to do it. That is what is meant by subsequent ratification.

"I have already alluded to a request, which defendant's counsel, Judge Gilbert, made for an instruction to you. I will repeat it to you. He is not here, but would undoubtedly like to have it repeated. It is the third of his requests. That the defendant is not liable for the loans unless they were authorized by her before made or afterwards ratified by her.

"Perhaps in this connection I ought to add what is requested by the counsel for the plaintiff, namely : that if the defendant claimed to own three-eighths of the steamer after it was papered in her name, (I understand counsel to mean enrolled,) it would be competent evidence of a sale of that share to her, and to make it her property.

"This would be an illustration of the rule of agency that I have suggested, that if a person act for you, without your consent in purchasing a piece of property for you, if afterwards you ratify his acts, then you would be liable for any promise he made in your behalf to pay for it, precisely as if you had authorized him before.

"That is what is meant by subsequent ratification.

"For while it is true, as her counsel contends, and I instruct you, that she would not be liable, unless she first authorized her husband to act in her behalf or unless knowing what he had done, she subsequently ratified it, you may infer such authority and subsequent ratification from the circumstances proved in the case, if they are sufficient to satisfy you of the truth of the fact."

The requests for instructions alluded to as made by counsel on each side were made before the jury were sent out. The jury were then sent out again and subsequently rendered a verdict for plaintiff in the sum of two thousand eight hundred and forty dollars and seventy-five cents.

*A. P. Gould*, for the plaintiff.

*W. Gilbert*, for the defendant.

The papers excluded were part of the written history of the business of the store, while plaintiff alleges defendant was proprietor ; they are of contemporaneous origin, growing out of the transactions in question. 1 Greenl. Ev. § 108. Viewed even as *res gestæ* the evidence is clearly admissible.

The report, being part of the exceptions, shows that it was contended for defendant, that the debt contracted by E. W. Stetson had been paid. The books excluded contained the accounts of the stock transferred from Stetson to plaintiff, and credits of the balance due him from Stetson, and of moneys

which plaintiff paid into the firm from time to time to make up the balance of his share of the capital. They embody evidence most important. During the period of the co-partnership, the books had been under the inspection of plaintiff without objection. They recorded the joint acts of the parties to the books, of whom he was one. *Dow* v. *Sawyer*, 29 Maine, 117; *Foster* v. *Fifield, Ib*. 136; *Pike* v. *Crehore*, 40 Maine, 503.

Stetson testifies that as joint builder he owned three-eighths of the Alice Virgie, and caused that interest to be enrolled to defendant. If therefore, Stetson, when Merry showed him plaintiff's letter, assented to plaintiff's order, and if he thereupon directed that his three-eighths be enrolled to his wife, that tends to negative plaintiff's allegation that defendant was a purchaser from him. That is what we expected to show by the witness. But the court cut us off *in limine* and would not allow us to approach the ultimate question. The explanation would complete the history of the transaction relating to the transfer. It is *res gestæ,* and the matter too familiar to require the citation of the many cases in our own books.

Defendant found herself with title to three-eighths of a vessel in herself. She held it in trust. The apparent legal title was in her. And it is obvious that underwriters and other outside parties to affairs involved in closing the concern would be satisfied with nothing short of the act of the apparent holder of the title. Under these circumstances she did that which the necessity of the plaintiff and the other owners required.

What good reason can be given, why this bearing of the case should not be given to the jury? or why these circumstances should be withheld from the jury? And if they should not be held back why should they not be distinctly presented to the consideration of the jury? And why should they not be instructed that what she did was the proper means to the end effected by that means?

Do those acts necessarily imply an admission of a purchase, or a ratification? If not, why should not the jury be instructed as to the legal bearing?

It is respectfully contended that the proceedings, after the jury were brought into court and declared their inability to agree,

were illegal in several particulars. R. S., c. 82, § 75 ; *Edmunds* v. *Wiggin*, 24 Maine, 505.

Counsel further elaborately argued the motion to set aside the verdict.

BARROWS, J. The plaintiff sues the defendant for certain sums of money which he says he lent her through the intervention of her husband acting as her agent to be used in the carrying on of the business in a certain store, and for the price of three-eighths of a small steamer taken by the husband in like manner for and in the name of the wife at the bills as built by the plaintiff. The defendant denies any interest in the transactions or authority given to the husband to act for her in the premises, says in effect that the plaintiff's dealings were all with her husband and not herself, and that the loans of money were repaid by being allowed to the plaintiff as his contribution to the funds of a copartnership which she claims subsequently existed between her husband and the plaintiff; and the plaintiff rejoins that the copartnership was with her, the husband representing her in that as in the other mutual dealings. The verdict being against her, the defendant brings the case here on exceptions and motion to set aside the verdict as against the evidence.

Some prominent facts proved beyond cavil favor the plaintiff's position. The defendant's husband was confessedly insolvent, and had been so for some time. Uncollected judgments were outstanding against him. The house they lived in had belonged to the wife for quite a number of years. Not long before, a store and stock in trade, of which the husband's father was the confessed proprietor, carrying on the business by the husband as his clerk and agent, had been conveyed, not to the husband, but to the wife, and she never parted with her title, only placing the deed and bill of sale in the hands of her husband, who continued to manage the trade, apparently, as he had done before the conveyances from his father to his wife. These facts were known to the plaintiff and even the defendant's husband, her principal witness, admits that he himself told him the most significant of them before applying to him for money. It does not seem probable that the plaintiff would prefer to give credit without

any security to the insolvent husband rather than to the wife who had property, or to have an insolvent copartner, whose business arrangements were liable at any time to be disturbed by his creditors. The defendant's husband testifies that an elaborate draft of articles of copartnership between the plaintiff and his wife, providing among other things for his own constant employment by the firm "as a salesman and generally to the care and superintendance of the store" was in his handwriting and was prepared by him after conference with the plaintiff and before the plaintiff took an interest in the business with any one. The defendant herself testified that she owned the three-eighths of the steamboat, and she seems in other ways to have recognized and ratified the negotiations of her husband in her behalf respecting it. If the jury believed the testimony given by the plaintiff and his wife, the defendant had knowledge from the first that her husband was dealing with the plaintiff in her name and on her account. The motion to set aside the verdict cannot be sustained for it is by no means reasonably certain that the jury erred. If, as is probable from the amount of the verdict, they found that the loans, (which were made previous to the forming of the copartnership) were paid by being accepted as the plaintiff's contribution to the copartnership funds, it is a result which would follow whether the husband or the wife was the partner and borrower, and we do not see how either party can complain.

Unless the defendant was injured by the exclusion of competent testimony offered in her behalf, or by the instructions given, or the refusal of those requested by her counsel, judgment should be rendered on the verdict.

We will consider first the exceptions to the exclusion of evidence offered. Now that parties and interested witnesses, and those connected in the bonds of matrimony are all permitted to testify to whatever is material upon the issue presented, there seems to be less reason than ever to enlarge the modifications, and seeming exceptions to the wholesome general rule, excluding hearsay testimony. It is a matter of curious interest to note how these modifications and exceptions have been extended, sometimes, apparently, for no better reason than the probability of the

correctness of the evidence thereby afforded in a particular case, sometimes from a seeming necessity for resorting to it upon the failure of more strictly legitimate sources. But the rule which excludes as hearsay the verbal or written declarations of third persons, not under oath nor subject to cross-examination and explanation from the declarants of the circumstances under which the declarations were made, ought to be carefully guarded, and not infringed unless it can be plainly seen that they belong to some exceptional class which can be counted upon to afford (without qualification or explanation) a reliable inference upon the precise issue which they may be supposed to affect. The probability of its being truthful in itself and affording a means of reaching the truth by correct inference may depend much upon the purpose for which it is produced. There would seem little occasion to resort to it merely for the purpose of corroborating the direct testimony of a witness who was so situated as to have it in his power to create and produce it at will, whether the inference to be drawn from it touching the subject of inquiry were correct or not. In such case, if the jury doubted the sworn statements of the witness, they would not be likely to credit him the more on account of any verbal or written acts of others which might be done under delusions that he had the power to create if he pleased. The whole would rest upon the credit given to the witness without strengthening it.

The first exception relates to the exclusion of certain files of papers under the following circumstances. Although the defendant's husband admitted in his testimony his own insolvency, and the constant liability of any attachable goods of his to seizure upon execution, and that his wife held the title to the house, store and stock of goods, and never had made any conveyance of them to him; that he had been merely the clerk and agent of his father in conducting the trade up to the time when his father made the bill of sale to his wife, and that he had informed the plaintiff of that conveyance, still he swore that his wife did not own the business, and had no interest in it from that date. He says she gave him the bill of sale which she received from his father, and that thenceforward he was the proprietor of the trade

in the store. Yet, when he had occasion to collect a bill for goods afterwards sold from the store, the suit was brought by him in her name.

Now the plaintiff had not offered testimony to show title in the wife, but only what representations as to title were made by husband and wife, upon the faith of which he claims he acted. The question who was the real owner of the goods in the store was only indirectly, if at all, connected with the questions which these parties were litigating, which were whether the plaintiff relied upon the defendant's credit in lending his money and in enrolling the three-eighths of the steamboat in her name as owner, and whether the defendant authorized or ratified her husband's transactions with the plaintiff in these matters as done in her behalf. When the title to the stock was confessedly in the defendant and this fact made known to the plaintiff (as defendant's husband testifies) proof that the husband made purchases and paid bills in his own name in conducting the business could hardly be expected to affect the decision of the questions between the plaintiff and the defendant. But conceding that such proof might have some bearing favorable to defendant, it remains to be settled whether the excluded evidence ought to have been received, and whether it can be said to appear from what is laid before us that defendant was injured by its exclusion.

The papers offered were described by the witness as "invoices of goods, notes, and drafts paid." Defendant's counsel said these were "invoices of goods delivered to this defendant" (probably meaning the witness), and "bills paid running to him," others which ran to his father, drafts and bills paid. There was no dispute as to the father's ownership of the stock, and bills to him were plainly irrelevant. A bundle of the papers was offered and an objection raised to the reception of any bundles, which was properly sustained. Each piece of documentary evidence offered should be presented by itself to the presiding judge, exhibited if desired to opposing counsel, identified by the court or the stenographer with suitable marks, and, if objected to, its genuineness established by testimony. Instead of doing this after excepting to the exclusion of the bundle, the defendant's

counsel made some ineffectual efforts to get a statement from the witness of the contents of one of the bills, presented the testimony of the witness to show that he bought goods for the trade in that store from Emery and Barker in February, March and April, 1874, a bill of which he had; and thereupon the counsel offered a paper, the genuineness of which or its relation to the matter in question was not established, or attempted to be established except by the counsel's own assertion. We see no error in excluding a paper thus presented; and moreover the matter was so indirectly connected with the issue the parties were litigating, and was as to the plaintiff so clearly *res inter alios*, that we think no new trial should be granted on this account.

Nor was the ledger presented in such a way that the defendant can well complain of its exclusion. Counsel cannot throw upon the court the duty of inspecting files of papers or manuscript volumes offered in bulk to see whether there is anything in them which is properly admissible, nor complain if, when thus offered, they are excluded. It is the duty of counsel to select the parts of such documents which they claim to be admissible, and point them out to the opposite counsel, and to the court, so that it may be known in the first place whether the opposite party will object and, if he does, that the court may pass upon the objection, without waste of time in ascertaining whether in a mass of irrelevant matter there may be something that might have a bearing upon the case. A different practice would tend more to confuse than enlighten the jury, and if counsel were at liberty to offer evidence of this description in gross and take their chance of having it admitted without objection, or sustaining exceptions if it turned out that there was something in it that might be deemed admissible, we should expect to see it always so presented as to afford the greatest scope for vehement assertion as to what appeared by it, assertion that it would be difficult for the opposing counsel or the jury either to verify or disprove in any reasonable time, and which accordingly, true or false, ought to have no influence in the determination of the case, but might or might not have such influence according to the prejudices of the jury touching the veracity of counsel.

The conversation between the defendant's husband and his brother-in-law, Merry, in respect to the enrolling of the three-eighths of the steamer, was rightly excluded. Either of them could testify to any fact within his knowledge respecting the enrollment which had a bearing on the question at issue; but neither was at liberty to state their conversations with each other in the absence of the plaintiff. Though it might be taken by the jury as corroborative of the testimony given by them respectively, it has no legitimate tendency that way, being too easily manufactured, and yet too difficult to contradict.

A lad by the name of Hatch, who lived in the defendant's family something more than a year, during the time covered by the co-partnership, having given testimony as to statements made in his hearing by the defendant, about the ownership of the goods and store, was contradicted as to the making of the statements by the defendant, and she now insists on her exception to the refusal of the presiding judge to permit her to testify that the lad was not allowed to mention the name of Mr. or Mrs. Virgie in the house. The lad having said that he was employed both in the store and house, defendant's husband testified that he was not employed in the store, and exception is taken to the exclusion of the further question whether he was "ever allowed in the store." We think neither of the exceptions is tenable. It is not apparent how either of the facts, if they were facts, would tend to contradict the witnesses' testimony on any material point, or that the defendant or her husband would have added to their own credit by testifying to them.

The exceptions state that the defendant requested the court to instruct the jury that they were to consider certain testimony given in the case by the plaintiff, and certain facts which the defendant claimed appeared in testimony, and further, "that if defendant held three-eighths of the vessel in trust, still, the legal title was in her, and the power of attorney and bill of sale of the old iron were appropriate means to enable the parties in interest to close the affairs of the vessel," and, "to give proper instructions upon the effect of the plaintiff's testimony relating to the disposition of the old iron and the money received from

the underwriters," and that these requests were refused. Exceptions cannot be sustained for such refusal. It is a matter which rests in the discretion of the presiding judge whether he will call the attention of the jury to any particular piece of testimony. The exercise of that discretion is not the subject of exceptions. Requests, such as the counsel made, will doubtless be granted, if in the judgment of the justice presiding it will contribute to an intelligent and correct decision of the vital questions of fact by the jury; whether it would do so or not is a question for the judge who knows the whole course of the trial and argument, and his decision of it is final. So long as he gives instructions upon the questions of law which are essential to a correct understanding of the legal rights of the parties (so far as there is any contest between counsel in respect to them) it is for him to determine whether and in what form he will call the attention of the jury to particular pieces of testimony, a proceeding which is often a delicate one under the statute prohibiting the expression of an opinion upon any issue of fact arising in the case by the judge, who is under no legal obligation to perform any part of the duty of counsel, nor can he be required to reiterate or enforce their arguments by reminding the jury of them in his charge. The defendant's counsel probably contended stoutly that all that she did in respect to the vessel was to use the "appropriate means" to enable the parties in interest to settle up the affairs of the vessel; but there is nothing to indicate that any question of law arose touching that. It was the question of fact whether she was the party in interest about which the controversy arose there.

Nor is it a proper mode of requesting instructions, to ask the presiding judge "to give proper instructions" upon the effect of this or that piece of testimony, or fact appearing in the case. The presumption is that all necessary and proper instructions were given; and if counsel claims any particular legal result as to the effect of such testimony or fact, it is for him to present his request in writing in the proper form, to enable us to determine the correctness of his claim. It may well be that proper instructions would not have favorably affected the position of the party complaining.

An examination of the statement in the exceptions of what occurred when the jury came into court after having had the case under consideration for some hours, discloses nothing of which the defendant can complain.

The construction of the statute regulating proceedings in such cases, which was given in *Edmunds* v. *Wiggin*, 24 Maine, 505, we deem correct, and it has been adopted by the re-enactment of the provision there considered in the subsequent revisions of 1857 and 1871. That it was proper for the judge at such a time to impress upon the jury the importance of their coming to an agreement if possible, was distinctly held in *Emery* v. *Estes*, 31 Maine, 155. What was said of the desire of the parties that a verdict might be reached, was said at the request of counsel of both parties and was doubtless satisfactory to the defendant until the jury found against her. If the counsel who now complains of it would have objected, he should have remained in court and expressed his dissent, upon which the presiding judge would doubtless have modified the statement so as not to include him. He could not by absenting himself before the case was completed, abridge the rights and duties of other counsel or the court.

We perceive nothing in what was said that tended to produce a wrong verdict, or to bias the jury for or against either party, except as they would be led by following legal conclusions from facts to be found by themselves. Defendant's counsel had not withdrawn the request for instructions made before the jury retired the first time, and whether he had done so or not it was proper for the court to give such instructions as he might deem appropriate to meet the difficulties which might trouble the jury with or without the request of either party, so long as the legal doctrines enunciated were correct, and no question of fact was taken from the jury or an opinion thereon expressed by the court. While it is not settled that either party may at that stage of the case request instructions, with the effect that their refusal, if correct, would be ground of exception, we have no doubt that the judge may, in his discretion, adopt suggestions from either or both, so far as he deems them sound and appropriate to direct the attention of the jury rightly to the questions before them.

No juror of average intelligence when told that "if the defendant claimed to own three-eighths of the steamer after it was enrolled in her name, it would be competent evidence of a sale of that share to her, and to make it her property" would be likely to understand that it was a decision of the judge that she made such claim, or that if she did, it was conclusive evidence that she owned the property, especially when followed in the same connection with the specific instruction that "she would not be liable, unless she first authorized her husband to act in her behalf, or unless, knowing what he had done, she subsequently ratified it, and that they might infer such authority or subsequent ratification from the circumstances proved in the case *if they are sufficient to satisfy you of the truth of the fact.*"

We find nothing in the facts or law of the case which requires us to send it to a new trial.

*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and LIBBEY, JJ., concurred.