Inez Summerville, Plaintiff, v. Matthew L. Rodgers, Defendant.
Matthew L. Rodgers, for Use of Inez Summerville, Appellant, v. Regal Mutual Insurance Company, a Corporation, Garnishee, Appellee.

Gen. No. 48,174.

First District, Third Division.

June 7, 1961.

Meyer S. Miller, of Chicago (Mark H. Ellis and C. D. Snewind, of counsel), for appellant.

George F. Barrett, of Chicago (Zachary D. Ford, Jr. and Edward Wolfe, of counsel), for garnishee-defendant-appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

Inez Summerville (hereafter referred to as the plaintiff) had a judgment for $25,000 entered in her favor in the Circuit Court of Cook County against Matthew L. Rodgers (hereafter referred to as the defendant). The action was predicated upon injuries received by the plaintiff when she was struck by an automobile driven by the defendant. The judgment was entered after an ex parte hearing following the default of the defendant. The plaintiff thereupon instituted garnishment proceedings against Regal Mutual Insurance Company (hereafter referred to as Regal), which company had issued a policy of insurance to the defendant covering the car involved in the accident for the period commencing June 1, 1956 and expiring September 1, 1956. Regal defended on the ground that the policy had been canceled on July 3, 1956. The accident upon which the judgment was based occurred August 25, 1956. The trial court entered judgment in favor of, and discharged, Regal as garnishee.

The arrangements made concerning the policy of insurance between the defendant and Regal were odd

and unusual. Regal was an automobile insurance company subsequently taken over by Puritan Insurance Company. Max L. Michaels was a general agent for Regal. Northwest Insurance Brokers, Inc. (hereafter referred to as Northwest) is a brokerage firm writing all types of insurance. Clark Acceptance Company (hereafter referred to as Clark) is a finance company owned by the son of the president of Northwest. Both Northwest and Clark operated at all times from the same locations and their employees were in some instances jointly employed by the two organizations.

On June 1, 1956 defendant had allegedly signed an agreement with Northwest. In that agreement it is stated that defendant applies to Northwest for certain insurance coverage, to-wit, a policy of "Automobile Liability and Property Damage" insurance covering a certain automobile, which policy was to be written for a period of one year by Regal, together with an "Industrial Life" policy and a "Personal Accident" policy, both of which were to be issued by the Pilgrim National Life Insurance Company, and a "Service Plan" to be issued by Northwest. It was further stated that the auto liability and property damage insurance to be issued by Regal was to bear date of June 1, 1956, and under "Payment Schedule" the total cost of the "Plan" was set at $116.00, payable one special payment of $30.00 and six payments of $14.35 to be paid monthly. No date of the first payment is set out in the application. This agreement further provided that defendant agreed to deliver, and did pledge and assign, all of the described insurance policies to Northwest or its assigns together with all rights thereunder, including all unearned or return premiums at any time payable to defendant under the said policies.

Northwest subsequently requested Michaels, an agent of Regal, for a policy to be issued through Regal to defendant, and accordingly Regal issued its "com-

422

bination automobile policy" bearing date of June 1, 1956 to defendant covering a 1950 Plymouth 2-door sedan for the period from June 1, 1956 to September 1, 1956. Under the policy of insurance Regal agreed to pay on behalf of the insured all sums of money which the insured should be legally obligated to pay as damages because of bodily injuries sustained by any person caused by accident or arising out of the ownership, maintenance and use of the said automobile.

After judgment had been entered against the defendant the plaintiff instituted garnishment proceedings against Regal. Service was had on September 6, 1957. Regal answered, admitting that prior to August 25, 1956 it had issued a policy of insurance to the defendant covering the car in question for the period commencing June 1, 1956 and expiring September 1, 1956. In answer to interrogatories Regal admitted that it had issued a policy of insurance covering the car in question for the term June 1, 1956 to September 1, 1956, but alleged that the policy was canceled effective July 3, 1956, and that no notice of the cancellation was given to the defendant since the policy was returned by defendant's agent to Regal for cancellation. In response to a request for admission of facts, Regal did not deny that the car involved in the accident was operated by the defendant, and admitted that the defendant is the person to whom the policy was issued by Regal though the policy was not physically delivered to him.

A hearing was had on the action in garnishment. In that hearing there was evidence that the policy of insurance had been issued by Regal on a 60-day credit. Northwest entered into an agreement with Clark under which Clark undertook to finance the defendant's indebtedness to Northwest, and Clark agreed to make payment to Regal as it became necessary and in turn collected from the defendant. The agreement between defendant and Northwest was assigned by the latter

to Clark. The insurance policy was retained either by Northwest or by Clark as security.

We have before us both an abstract and additional abstract, together with the record. Plaintiff was injured on August 25, 1956. The evidence in this case in many instances is contradictory and obscure. From it it may be gathered that Regal on September 2, 1956 was sent an accident report from the defendant and a letter dated September 21, 1956, in which Michaels enclosed a letter from the attorney representing the plaintiff together with an attorney's lien. No premium payments were ever made by the defendant. An employee of Clark and Northwest testified that certain notices regarding the premium payments were sent to the defendant and that on June 28, 1956 an employee of Clark mailed to Michaels the policy requesting that the same be canceled. Michaels sent the policy to Regal on July 3, 1956 with a request it be canceled as of that date, and according to the records of Regal the policy was canceled on July 3, 1956.

The chief clerk for the Prudence Mutual Insurance Company, which company had charge of the books and records of Regal, testified that the original policy is in jacket form which provides the standard form of the insurance agreement, and that the part which was introduced in evidence is "the declaration showing the name of the insurer, coverage, automobile insurance and the total premium charged. Now, the other part is the insured's agreement, which is the jacket form, which fits on this and which is a standard form of the policy, which I do not have. I do have a copy of it." He then stated he did not know where the balance of the policy that was issued to Matthew Rodgers in 1956 is. The plaintiff then introduced a copy of the "jacket."

There is also in the record as an exhibit a letter from Michaels to Regal, dated July 3, 1956, which contained the statement: "We are herewith enclosing the

424

above captioned policy for flat cancellation." There is also testimony in the record that it was the custom of Regal when an insurance policy was turned in for cancellation and canceled, to destroy the jacket part of the policy and preserve only the declaration. There is also in the record a letter from Regal, dated November 16, 1956, addressed to the attorney for the plaintiff, which states that the defendant's policy was canceled effective July 3, 1956.

At the close of the hearing the court on April 7, 1956 found the issues in favor of Regal and against the plaintiff, entered judgment accordingly, and ordered Regal discharged as garnishee. This appeal was taken from that judgment order.

The plaintiff contends that the defense of cancellation of the duly issued policy of insurance is an affirmative defense which must be proved by clear, competent and unequivocal evidence; that the evidence on that point is uncertain and questionable, and fails to sustain the required burden of proof; that there is no competent evidence in the record to establish that the document which purportedly authorized the cancellation by Clark was in fact signed by the defendant; and that the policy was not canceled in accordance with its written terms.

Regal's contention is that the defendant's policy of insurance was effectively canceled by the defendant's duly authorized and designated agent on July 3, 1956, and that the policy of insurance was not in effect on the date of the accident which allegedly caused injury to the plaintiff.

The insurance policy provided:

> "24. Cancellation. This policy may be canceled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancelation shall be effective. . . ."

425

There is nothing in the evidence to indicate that the defendant himself had possession of the policy or that he, in compliance with its terms, mailed it to Regal for cancellation. If the policy was validly canceled, it was canceled by Regal when it received the policy from Michaels requesting such cancellation, Michaels in turn having received it from Clark and Northwest. On July 3, 1956, the date of the alleged cancellation, had the policy been in the possession of the defendant, Regal could not have canceled the policy for default in payment of the premium since a credit of 60 days had been given. Unless the agreement between the defendant and Northwest, dated June 1, 1956, is valid, there is no basis for the cancellation of the policy. That document appointed Northwest or its assignees as attorneys in fact of the defendant with authority to cancel the policies and to give notice to the insurance company of such cancellation upon defendant's defaulting in the payment of any instalment therein provided, and stated that he had pledged, assigned and agreed to deliver to Northwest the insurance policy as collateral guaranteeing his debt to Northwest or its assignees. This agreement is the keystone of the entire case. Unless such agreement was in effect neither Clark, Northwest nor Michaels had any right to the possession of the policy of insurance, much less the right to send it to Regal with a request for its cancellation. The plaintiff argues there is nothing in the record to show that the document was signed by the defendant. Regal contends that the plaintiff did not properly preserve that point for review. It becomes necessary to closely scan the steps taken in offering that document in evidence.

Prior to the garnishment hearing a judgment had been confessed on the document in question in the Municipal Court of Chicago for $52.00 plus attorney's fees and costs in favor of Clark against the defendant.

The date of this judgment was August 21, 1956. At the garnishment hearing the plaintiff had certain documents, taken from a file of the Municipal Court, marked as defendant's exhibits for identification, as 7, 8 and 9. In response to a question of the court the attorney for Regal stated: "Seven is a military affidavit on the Municipal Court form number 402. Eight is the so called half sheet of the Municipal Court of Chicago; case 56 M 176703; and nine is a statement of claim in the same matter." The attorney for the plaintiff then stated: "This has a lot to it, I have to read all this print." The court: "It is not being offered, is it?" Attorney for Regal: "I intend to offer it immediately. *It is a record of the Municipal Court of Chicago. A judicial record.*" (Italics ours.) The court: "Is it a prerequisite to any further testimony this afternoon? If not, I will reserve ruling on it." Attorney for Regal: "It is a prerequisite, your Honor." The court: "All right, we'll take that time right now." Attorney for plaintiff: ". . . are you offering them into evidence?" Attorney for Regal: "Yes." Attorney for plaintiff: "Well, it is a complicated document, but I don't know how it is material to this case. I really haven't had a—" The court: "Suppose you do this. Let's admit it for the purpose of—as Mr. Ford indicates, he wishes to have further testimony in which it would play a part and it would be admitted on the condition that they are then in connection with the issues in this case, and if not, you may then make a motion to strike and I would entertain it." Attorney for plaintiff: "You are admitting it over my objection now?" The court: "Yes. As to Defendant's Exhibit 9, photostatic copies may be substituted for that. While 7 and 8 have been admitted so as to—have been offered so as to include all of the file. Showing the judgment was entered on the statement of claim. . . ."

Exhibit 9 consisted of the statement of claim filed in the Municipal Court by Clark against the defendant

in the confession of judgment case. Attached to it was the agreement in question. Both the statement of claim and the agreement were marked defendant's exhibit 9. The court then stated that photostats of exhibits 7, 8 and 9 may be substituted for the originals and the originals might be returned to the clerk of the Municipal Court.

After Regal rested the attorney for the plaintiff said that before he rested he wanted to ask about certain exhibits. After some discussion about the exhibits the court said: ". . . 7 is the military service affidavit. Number 8 is the half-sheet and 9 is the statement of claim." The attorney for the plaintiff then said: "Those, I am going to ask—I think you admitted them with the reservation they would be connected up. I submit they have not been connected up. Especially number 9, that is suppose to be a contract between Northwest and somebody by the name of Mr. Rodgers. It has not been established that Mr. Rodgers signed that agreement. No testimony whatever that is his signature, and therefore, it is not—" The court: "You mean no testimony that that is the same man who was in—" Attorney for the plaintiff: "That's right." Attorney for Regal: "That question was not raised. The question was my connecting them up to this lawsuit. The question of admitting these documents from the Municipal Court wasn't any question as to the authenticity of the records. They were admitted subject to my connecting them up in this case. This comes very late, Judge. I don't think it should be accepted as an objection at this time." Attorney for plaintiff: "You said you would connect them up. How have you connected them up? No identification of signature. They just bring a document here. I don't know what other purpose it has other than to try and bind a Mr. Rodgers, and they haven't identified or proven that he signed it, therefore, it is not even admissible—"

Attorney for Regal: "No such objection was made when I introduced that document. It was admitted and it was admitted with the reservation that Counsel could later object if I did not show it's relevancy in this trial, and that is the only reason that he raised an objection at that time, and that was as to the relevancy in this trial." The attorney for the plaintiff again objected that there was no proof of the signature. The attorney for Regal stated that the document was in evidence and that that point was not raised. The court then stated that according to his recollection there was no objection raised as to the lack of proof of signatures, the objection was that the documents had nothing to do with the case. The attorney for Regal stated that the connection with the case is "the contract provides that the Northwest Insurance—" The court: "Provides. One connection is it establishes the contractual relationship between Rodgers and Northwest?" Attorney for Regal: "And the right of Northwest to cancel his policy." The court: "What is the connection with this case of the military service affidavit and the half-sheet of the Municipal Court?" Attorney for Regal: "There is no direct connection excepting so far as they are part of the complete record of the Municipal Court of Chicago in that particular case."

No order appears in the record by which the court directly overruled the plaintiff's motion to strike. However the court found the issues for Regal and could not do so without considering the agreement as having been properly admitted in evidence.

Counsel cites no Illinois cases which would allow the defendant to make an agreement giving power to an agent to surrender for cancellation the policy of insurance issued to him. In support of his contention he does cite Angelo v. Traviglia [Ohio Com Pl], 155 NE2d 717, and 8 Appleman, Insurance Law and Practice, sec 5018, together with a number of other cases

from other States. If we assume that it should properly be held that in this State a contract such as that allegedly entered into here between the defendant and Northwest was valid, we nevertheless are still faced with the question as to whether the contract was properly considered by the trial court.

 Regal earnestly contends that the court's refusal to sustain the plaintiff's motion to strike the contract was proper. This motion was made after Regal rested. Regal bases this contention upon its allegation that at the time when the contract was first offered in evidence the plaintiff objected to its introduction only on the ground that it was not material, and that having made such an objection all other grounds of objection were waived. In support of that contention it cites Wigmore on Evidence (3rd ed.), vol. 1, sec. 18; Spencer v. Burns, 413 Ill. 240, 108 N.E.2d 413; Illinois Iowa Power Co. v. Rhein, 369 Ill. 584, 17 N.E.2d 582, and People ex rel. Nelson v. Citizens State Bank, 274 Ill. App. 468. It contends that those courts hold that a party objecting to evidence must point out the objection specifically so as to afford an adverse party an opportunity to correct it. With that rule of law there can be no quarrel. It is also the rule that documentary exhibits before being introduced in evidence must be authenticated. The genuineness of the document and its execution must be proved. Cleary, Handbook of Illinois Evidence, secs. 10.1 and 10.2, and cases therein cited. From the earliest times our courts have so held, and it has also been held that unless the introduction of the document has been specifically objected to on the ground that there was no proof of execution, such objection is not preserved by a general objection to its introduction. In one of the earliest cases, Harmon v. Thornton, 3 Ill. (2 Scam.) 352, at page 356 the court says: "The law is well settled, that if the objection was not taken or persisted in upon the

trial, it can not be taken here, where the objection is of such a nature that it might have been removed by further evidence." In Sargeant v. Kellogg, 10 Ill. (5 Gilm.) 273, at page 281 the court says:

"The general objection to its introduction must be understood as only raising the question of the relevancy of the agreement as evidence. If objected to because the preliminary proof of its execution was not made, that special objection should have been taken. Where various objections may be made to evidence, some of which may be removed by other proof, the party making the objection ought to point out specifically those he insists on, and thereby put the adverse party on his guard, and afford him an opportunity to obviate them. *He ought not to be permitted, after interposing a general objection, to insist on particular objections in this court, which, if even suggested in the court below, might have been instantly removed.* A due regard to the character of the courts and the rights of suitors will not for a moment tolerate such a practice." (Italics ours.)

To the same effect are Buntain v. Bailey, 27 Ill. 409, 410; Gillespie v. Smith, 29 Ill. 473, 478; Howell et al. v. Edmonds, 47 Ill. 79; Wilson v. King, 83 Ill. 232, 235; Calumet etc. Dock Co. v. Morawetz, 195 Ill. 398, 409, 63 N. E. 165, 169. In Clevenger v. Dunaway, 84 Ill. 367, 369, the court says:

"It was agreed between the parties, that the original papers had been lost, and, necessarily, secondary evidence of their contents was then admissible. The evidence tended to identify the parties with the present parties, and to show that the rent in question was the same rent now claimed to have been due, as justifying the issuing of the distress warrant under which appellant claims protection. The defendant appeared and defended.

431

That warrant was issued and the trial thereon had, after the rent here in question was due; and we see no reason why, if the rent was due appellant, for which he issued the warrant under which he now seeks to defend, he was not entitled to judgment in that proceeding. The objection of appellant was general. If he relied upon the insufficiency of the evidence to show the contents of the lost papers, or to identify the claim for rent with that involved in the present controversy, he should have made that specific objection at the time, either against the admission of the evidence, or by motion to exclude it from the jury. Such an objection, if then made, might have been obviated by additional and more satisfactory evidence, and it can not, therefore, now be urged here. . . . [Citing cases.]"

In 88 C. J. S. Trial, sec. 62a, it is stated: "It has been said that the courts, have never announced a definite method to be followed in introducing documentary evidence, but whether a document is in evidence must be determined from the facts of each case. However, where documentary evidence is offered, each piece should be presented by itself to the court, exhibited, if desired, to the opposing counsel, identified by the court or stenographer with suitable marks, and, if objected to, its genuineness established by testimony . . . ." In Virgie v. Stetson, 73 Me. 452, at 462, the court says:

"Nor was the ledger presented in such a way that the defendant can well complain of its exclusion. Counsel cannot throw upon the court the duty of inspecting files of papers or manuscript volumes offered in bulk to see whether there is anything in them which is properly admissible, nor complain if, when thus offered, they are excluded. It is the duty of counsel to select the parts of such

432

documents which they claim to be admissible, and point them out to the opposite counsel, and to the court, so that it may be known in the first place whether the opposite party will object and, if he does, that the court may pass upon the objection, without waste of time in ascertaining whether in a mass of irrelevant matter there may be something that might have a bearing upon the case. A different practice would tend more to confuse than enlighten the jury, and if counsel were at liberty to offer evidence of this description in gross and take their chance of having it admitted without objection, or sustaining exceptions if it turned out that there was something in it that might be deemed admissible, we should expect to see it always so presented . . . ."

The contract, which was vital to Regal's defense, was offered in a peculiar, not to say extraordinary, way. The attorney for Regal brought into court a file of the Municipal Court of Chicago. The contents of that file proved that a judgment by confession, on the instant contract, had been heretofore entered against the defendant. That fact had no materiality whatsoever in the instant lawsuit. At the time of the offer the attorney for Regal identified exhibit 7 as a military affidavit, 8 as the half sheet of the Municipal Court of Chicago, and 9 as "a statement of claim in the same matter." Attached to the statement of claim was the agreement, and the agreement at this time was, figuratively speaking, as the chrysalis of a dragon fly, safely surrounded, protected and concealed by the cocoon of the statement of claim. Both the court and plaintiff's attorney apparently were thereby understandably confused. The confusion was created by Regal. The better and more ordinary way to have proffered such evidence would have been to have, on motion, in the Municipal Court withdrawn the original

433

contract, substituting therefor a photostatic copy of the same, and then to have offered the contract as a contract in evidence in the instant trial. The contract then would have been called to the attention of court and counsel, and there would have been no confusion. At the time the exhibits were offered, plaintiff's counsel, confronted with the three documents (the contents of the file of the Municipal Court, none of which seemed to have any materiality or relevancy to the issues before the court), stated he wanted to read them and that he did not know how material they were to the case. The court, in response to the insistence of Regal's attorney that it was necessary to have them in evidence immediately, admitted them conditionally on the provision that the documents be connected with the issues in the case and that otherwise the plaintiff might make a motion to strike which would be entertained by the court. This was a trial by the court without a jury. All that the court here did was to permit the documents to be admitted subject to a motion to strike. When the attorney for the plaintiff stated to the court that it was a complicated document and "I don't know how it is material to this case. I really haven't had a—[here the court interrupted him]," he was in substance making a request for time to examine the document. The court by its order gave him that time.

Finkel, an employee of Northwest, later testified, and "exhibit 9" was shown to him. At that time it is apparent that the document shown as "exhibit 9" was the agreement, which now had become separate and apart from the statement of claim and was ambulating on its own power. The confusion apparently still persisted. The attorney for the plaintiff stated he was going to object to any testimony concerning the document inasmuch as it was not in evidence. The attorney for Regal assured court and counsel that the document

had been admitted in evidence, and Finkel then stated that the document was maintained under his supervision and direction and that it was a contract entered into between defendant and Northwest "listing policies or services he purchased through our company." He further stated that he did not know of his own knowledge whether the defendant executed the contract and that he did not see him sign it. It is significant that after Finkel's testimony was concluded the court stated that he agreed with the attorney for the plaintiff that "there seems to be something ahead to connect 7, 8, 9 and 10 to the issues of this case, but if they are not connected you may move to strike it."

█ The purpose of the requirement that a specific objection be made to the execution of the document, as is indicated by the cases we have cited and quoted from, is that the trial court be apprised of the objection and that the party proffering the document may have an opportunity to introduce evidence which will properly authenticate it. When the plaintiff's motion to strike was made after Regal had rested, it was then made clearly evident to the court that the plaintiff was objecting that there was no proper proof of the execution of the document. Under the circumstances in the case before us the objection was made in apt time. At that time the court could have permitted Regal to introduce such evidence as it might have to prove that the document had been executed by the defendant. No such request was made by Regal. Regal relied solely on the fact that at the time the statement of claim, with the contract attached, was first offered no objection had been made that the contract had not been executed by the defendant. During this latter discussion the court inquired as to what relevancy the rest of the file had to the instant case, and the attorney for Regal makes the rather

435

extraordinary statement that the only purpose of the introduction of the file was that they are part of the complete record of the Municipal Court of Chicago in that particular case. That connected with the fact that at the time when the document was first offered Regal's attorney stated that it was being offered as a judicial record gives a clue to the reasoning of counsel. It is, of course, not true that the execution of a document such as this is proved by the fact that a court at another time has entered a judgment upon it as confessed. To be properly introduced in the instant trial there must be proof of execution. The manner of introduction and the failure of Regal to produce any evidence with reference to the execution of the document by defendant could cause a serious suspicion that no such evidence was available. The court was in error in not sustaining plaintiff's motion to strike the document. Had the document been stricken the entire case of Regal would have fallen.

The judgment of the Circuit Court entered in the garnishment proceedings is reversed and the cause is remanded for further proceedings consistent with the views herein expressed.

Reversed and remanded.

SCHWARTZ, P. J. and DEMPSEY, J., concur.