FIRST DIVISION 

June 5, 2000

No. 1-98-4712

MARTHA ANDERSON, 

Petitioner-Appellant, 

v.

THE HUMAN RIGHTS COMMISSION and COOK COUNTY'S OAK FOREST HOSPITAL,

Respondents-Appellees.

)

)

)

)

)

)

)

)

)

)

Petition for Review of an Order of the Illinois Human Rights Commission

Honorable

Paul Doyle,

Administrative Law

Judge Presiding.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Petitioner, Martha Anderson, appeals from an order entered by the Illinois Human Rights Commission (Commission) directing a finding in favor of respondent, Cook County's Oak Forest Hospital, on petitioner's employment discrimination claim.  On appeal, petitioner raises numerous alleged procedural errors, the cumulative effect of which she claims deprived her of a fair and impartial trial.  She contends that the administrative law judge (ALJ) erred in the admission and exclusion of evidence throughout the hearing and that the ALJ erroneously permitted respondent's attorney to question petitioner regarding various documents not properly admitted in evidence.  In addition to numerous other issues raised, petitioner also claims that the ALJ's directed finding for respondent was against the manifest weight of the evidence.  For the reasons that follow, we reverse and remand.   

I. FACTS

Respondent initially hired petitioner in January 1990 to work part-time as a "floating" secretary.  From January 1990 through November of 1990, petitioner traveled between the various hospital departments to work as needed.  On November 28, 1990, petitioner met with the respondent's billing supervisor, Chris Herzke, regarding a permanent full-time billing position with respondent.  Two days after their meeting, Herzke called her to tell her that a county hiring freeze was in effect and that, as a result, she could not hire or transfer any  new employees.  In late January, petitioner received a call from respondent's personnel department, giving her a starting date of January 28, 1991.  Petitioner started this position on January 28, 1991, and worked in the billing department until Herzke discharged her on March 20, 1991.     

On September 3, 1991, petitioner filed a charge of age discrimination against respondent with the Illinois Department of Human Rights (the Department).  The Department did not file a complaint with the Human Rights Commission following its investigation, so petitioner filed a complaint on her own behalf.  She alleged that the hospital subjected her to unequal conditions of employment due to age and that the hospital terminated her due to her age.  On October 27, 1993, respondent filed its answer, denying the allegations.  

The matter was heard before an ALJ on September 10 and 11, 1997.  At the hearing on the matter, petitioner proceeded 
pro se
.  The ALJ explained that the hearing would be conducted in accordance with the rules of evidence as applied in civil cases and outlined several evidentiary principles for petitioner's benefit.  The ALJ explained: "Evidence must be presented and identified through the testimony of witnesses.  If you have any documents that you want me to consider, they are not evidence in the case unless you move for them to be submitted into evidence and they are, in fact, admitted into evidence, so either party can object to the admission of a document on the basis of proper legal argument."  The ALJ also explained some basic trial procedure for the benefit of petitioner, including the bifurcated format of the hearing.  After answering several questions regarding hearing procedures, the hearing began.  

After opening statements from both sides, petitioner called four witnesses.  Earlene Brown, one of respondent's employees, testified that she knew petitioner from corresponding with her when Brown worked in the outpatient billing department.  However, she testified on cross-examination that she did not work in the same office as petitioner.  She testified on cross-examination that she had no knowledge of what transpired in the billing department where petitioner worked other than what petitioner herself had told her.  She admitted to having no personal knowledge of petitioner's work product when she worked in the billing department.

Petitioner next called Marge Papp to the witness stand.  Papp testified that she was 49 years old when Herzke hired her as a clerk IV in the finance department of the hospital.  Although Herzke hired her in November of 1990, she did not begin work until December 31, 1990.  Papp testified that she worked with petitioner temporarily, prior to petitioner's relocation to outpatient billing on the first floor.  Although she did not work with petitioner after petitioner's transfer, she testified that she visited the first floor from time to time and observed petitioner stationed in the middle of the room with a chair and a typewriter.  Petitioner never seemed resentful and did not complain about being assigned to do filing work.  After petitioner left her employment with respondent, Herzke did not immediately replace her.  Later, a woman named Judy Schnuckel replaced her.  Schnuckel was 13 years younger than petitioner. 

Petitioner next called Judy Schnuckel to the witness stand.  Schnuckel testified that she was 48 years old in June of 1991, when Herzke hired her to do Medicare billing for respondent.  After completing her training, she worked on the first floor of the hospital, from a desk with a phone.  On cross-examination, Schnuckel conceded that she did not have her own desk until she completed her training.  During her training, she sat in the reception area of the office at the front desk; sometimes, she used other employees' offices if they were not at work.  She also sat at the typing table in the outer office.  

Elaine Diericks then testified that she worked with petitioner in the outpatient billing department and observed petitioner  working in the front office, using the three chairs as a desk.  She testified that the treatment that petitioner received during her training was "quite different" compared to the treatment that Elaine received during her outpatient training.  She stated that petitioner's replacement, Judy Schnuckel, also received better treatment during training than petitioner.  According to Diericks,  Schnuckel "was trained correctly" by one person, instead of two.  Diericks further stated that she became upset about the treatment that petitioner received and spoke to Herzke about it, but that the situation never changed.  Petitioner asked Diericks for help, so Diericks tried to help her during her lunch breaks.  On cross-examination, Diericks testified that she did not have her own phone at her desk.  When asked if petitioner received poor treatment at work due to her age, she responded,"Not that I am aware of."  

Finally, petitioner testified about her experience as an employee with respondent.  Respondent initially hired petitioner in January 1990 to work as a part-time secretary.  She testified that she was 61 years old when she first met with Herzke regarding a permanent full-time billing position with respondent on November 28, 1990.  Two days after their meeting, Herzke called her to tell her that a county hiring freeze was in effect and that, as a result, she could not hire or transfer any new employees.  Petitioner "accepted that" and waited two months to hear from Herzke about the end of the hiring freeze.  In mid-January 1991, petitioner called Herzke to inquire about the status of her job.  Herzke again informed her that the hiring freeze had not yet ended and that she did not know when it would end.  About 10 days later, petitioner phoned the office of the Cook County board president and spoke with a woman who identified herself as the president's secretary.  The woman told petitioner that, to her knowledge, there was no hiring freeze in effect and that she would "look into it" for her.  Petitioner testified that several days later she received a call from respondent's personnel department, giving her a starting date of January 28, 1991. 

When she reported for work, Herzke assigned her to filing on the second floor of the hospital for three straight weeks, a different assignment than what other new billing clerks were given.  After completing her three weeks of filing, Herzke sent her to the outpatient billing department, where she used three chairs as a workstation, which was also different from what was provided to other billing clerks for working purposes.  She worked at the three chairs for 22 days.  On March 20, 1991, Herzke informed petitioner that she was discharged, effective immediately.  Later, Herzke allowed petitioner to work for another two weeks for financial reasons but conditioned the additional two weeks upon petitioner's agreement not to discuss her termination with any of the other employees.  When petitioner asked if she could do anything differently, Herzke informed her that the discharge was irreversible.  At the end of the next two weeks, Ms. Herzke allowed petitioner to work for an additional two weeks.  Her last day of work was April 19, 1991.  

Petitioner further stated that she never received an evaluation while working for respondent, although later, when she returned to the premises to inspect her personnel file, she found a written evaluation signed by Herzke in her file.  On her evaluation, she had received a 69, below passing, "on every phase of [her] abilities."  The second time that she went to examine her personnel file, she noticed that her five letters of recommendation that had previously been included in her file were missing.  She  repeatedly testified to her belief that respondent discharged her due to her age, and that respondent used her poor performance evaluation as a pretextual reason for her discharge.

After the close of her testimony, petitioner rested as to liability.  Respondent moved for a directed finding, which was granted.  Petitioner now appeals.  

II. ANALYSIS

Sections 2-102(A) and 1-103(Q) of the Illinois Human Rights Act prohibit an employer from discharging an employee on the basis of race, color, religion, national origin, ancestry, age, sex, marital status, handicap, or unfavorable military discharge.  775 ILCS 5/2-102(A), 1-103(Q) (West 1998).  Direct appellate review of the Human Rights Commission's final determination is available under the Administrative Review Law (735 ILCS 5/3-113 (West 1998)).  The court is empowered to review any and all questions of law or fact presented by the record.  
Pepsi-Cola General Bottlers, Inc. v. Illinois Human Rights Comm'
, 137 Ill. App. 3d 288 (1985).  The reviewing court has a duty to examine the procedural methods employed at the administrative hearing to ensure that a fair and impartial procedure was used.  
Metz v. Illinois State Labor Relations Board
, 231 Ill. App. 3d 1079 (1992).  The findings of the administrative agency must be based on evidence admitted in the case, and nothing can be treated as evidence that is not admitted as such.  
Novosad v. Mitchell
, 251 Ill. App. 3d 166, 174 (1993).  Due process requires that all parties have an opportunity to cross-examine witnesses and offer rebuttal evidence.  
Novosad
, 251 Ill. App. 3d 166.  Reviewing courts may not interfere with the discretionary authority vested in an administrative body unless that authority is exercised in an arbitrary or capricious manner or the administrative decision is against the manifest weight of the evidence.  
Murdy v. Edgar
, 103 Ill. 2d 384, 391 (1984); 
Board of Education of School District U-46 v. Illinois Educational Labor Relations Board
, 216 Ill. App. 3d 990, 998 (1991).  

A. The Hearing Process

We first address petitioner's contention that the cumulative effect of the procedural errors committed at the hearing deprived her of a fair and impartial hearing.  In support of this contention, petitioner relies chiefly upon two alleged errors: (1) that the ALJ erred in denying petitioner's motion to introduce documents; and (2) 
that the ALJ improperly permitted respondent to question her regarding altered documents.  

We first address petitioner's contention that the ALJ erroneously prevented her from introducing various documents into evidence.  Regarding the admission of evidence in administrative proceedings, the Illinois Administrative Procedure Act provides, concerning contested cases, in pertinent part:

"(a) Irrelevant, immaterial, or unduly repetitious evidence shall be excluded.  The rules of

evidence and privilege as applied in civil cases in the circuit courts of this State shall be

followed.  Evidence not admissible under those rules of evidence may be admitted, however,

(except where precluded by statute) if it is of a type commonly relied upon by reasonably

prudent men in the conduct of their affairs."  5 ILCS 100/10-40(a) (West 1998). 

In civil cases in Illinois, the basic rules of evidence require a proponent of documentary evidence to lay a foundation for the introduction of that document into evidence.  
Seward v. Griffin
, 116 Ill. App. 3d 749, 763 (1983).  Evidence must be presented to demonstrate that the document is what its proponent claims it to be.  
Ross v. Pfiefer
, 39 Ill. App. 3d 789 (1976).  Without proper authentication and identification of the document, the proponent of the evidence has not provided a proper foundation and the document cannot be admitted into evidence.  
Summerville v. Rodgers
, 31 Ill. App. 2d 420, 430 (1961).  The purpose of requiring a foundation is to prevent "inadmissible evidence from being suggested to the [trier of fact] by any means."  M. Graham, Cleary & Graham's Handbook of Illinois Evidence §901.1, at 905 (7th
 ed. 1999).  

The record reflects that petitioner failed to provide a proper foundation for the purpose of admitting into evidence her supporting documents during her case in chief.  For example, during her direct examination of Judy Schnuckel, petitioner attempted to introduce a county job requisition form that was not prepared by Judy Schnuckel.  The following exchange occurred:

"COUNSEL FOR RESPONDENT: At this point, the [r]espondent would object to

the [c]omplainant testifying on her own behalf through the witness, Judy Schnuckel.  

HEARING OFFICER: All right.  That's sustained.  The document from which you

just read that information may not be read into the record until the document has been

received into evidence.

PETITIONER: The document had been in evidence.

HEARING OFFICER: I don't have it.

PETITIONER: I beg your pardon.

HEARING OFFICER: You have to do certain foundational requirements as to

authenticity and overcome hearsay objections, et cetera.  You need a witness on the stand -

I'm assuming there would be an objection, but you need a witness on the stand who is

competent to testify to that document.  You can't offer it through this witness."

Similarly, during Marge Papp's testimony, the ALJ admonished petitioner to satisfy basic foundational requirements:

"PETITIONER: Have you ever seen this Margie?  I doubt it because that is [c]ounty

personnel forms.  The employees don't get them.

WITNESS: No, I've never seen them.

PETITIONER: I didn't think you had.  You see it says - 

HEARING OFFICER: Can - you can't ask questions about something she hasn't seen.

That isn't to say that that document may not be used later on.  It's to say that that's not a

proper witness to ask questions about a document, since she has never seen it before."

The hearing officer properly required petitioner to satisfy foundational requirements prior to permitting her to enter her documents into evidence, to question witnesses about those documents, or to read from those documents.  He explained the necessity of establishing that her documents were what they purported to be and elaborated on the various procedures available to her to provide the necessary foundations.  Accordingly, petitioner's claim that the ALJ erroneously denied her motion to admit her unauthenticated exhibits into evidence is without merit, because she failed to provide the proper foundation for the admission of any of these exhibits.

However, our review of the record reveals a departure from basic evidentiary standards as applied to opposing counsel.  We note that, although petitioner failed to properly admit any documents into evidence during her case in chief, due largely to respondent's objections, respondent was permitted to cross-examine petitioner at length over petitioner's objections
 on numerous documents that were never properly admitted into evidence.  Although the ALJ assured petitioner that he would not consider any documents not properly admitted into evidence, he allowed respondent to continue to attempt to elicit detailed testimony from petitioner regarding various unauthenticated documents not admitted into evidence.  Petitioner's frustration and confusion at this unequal application of the rules of evidence is demonstrated by the following exchange which occurred when counsel attempted to cross-examine her with her job evaluation:

"PETITIONER: He said for cross-examination.  I thought if we can't use it as

evidence, how can he cross-examine on it?  Did I understand correctly?

COUNSEL FOR RESPONDENT: As I am not seeking to introduce this in

[c]omplainant's case at this time.  I am - I do plan to cross-examine the witness on that

document.  When the witness attempted to read portions that I wasn't asking about into the

record, I said I have no objection to the whole exhibit going in in [c]omplainant's case, if that's

what she desires.  * * *

PETITIONER: I object on the basis of why is he asking me?  I didn't write this.  I

didn't evaluate it.  I didn't fill this out.  I didn't see it until after I was gone.  So why are you

asking me the validity?  To me, nothing.  I shouldn't be the one he questions on it.  This was

presented by his - the people he is representing.  He should be asking them."

The ALJ overruled petitioner's objection and allowed counsel to cross-examine petitioner on

the job evaluation document at length.  Although the scope of cross-examination is generally left to the discretion of the trial court, the court is required to keep the cross-examination within fair and reasonable limits.  
Green v. Keenan
, 10 Ill. App. 2d 53 (1956).  Furthermore, the cross-examiner should be prohibited from using cross-examination as a means of exceeding the scope of direct examination to present his or her theory of the case through cross-examination.  
Suich v. H & B Printing Machinery, Inc.
, 185 Ill. App. 3d 863, 876-77 (1989).  Although the danger in allowing such an approach is more significant in a jury trial, the abuse of cross-examination does not become permissible or advisable merely because the hearing or trial is conducted before a single fact finder.   In this case, counsel cross-examined petitioner regarding seven documents, several of which were never discussed or even mentioned on direct examination.  There was no testimony from the author of any of the documents or from anyone familiar with these documents for purposes of foundation.  
Evans and Associates v. Dyer
, 246 Ill. App. 3d 231, 237-38 (1993).  None of these documents were authored by petitioner.  Petitioner repeatedly inquired of the ALJ why counsel was permitted to question her at length regarding documents that had not been admitted into evidence when she was not permitted to do so.  The acquiescence on the part of the ALJ regarding opposing

counsel's extensive use of these documents, despite petitioner's frequent objections, resulted in error. 

None of these documents were admitted into evidence as a business record since the proper foundation under the business record exception was never established.  Supreme Court Rule 236 (134 Ill. 2d R. 236) allows certain types of business records to be admitted as exceptions to the hearsay rule.  In order for the business records exception to be applicable, Rule 236 provides that it must be shown the record was made in the regular course of business and that it was the regular business practice "to make such a memorandum, or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter."  134 Ill. 2d R. 236.

Petitioner was extensively cross-examined by respondent about respondent's exhibit No. 4, an evaluation form found in petitioner's personnel file.  Petitioner, on direct, had testified that she never received an evaluation while working for respondent.  Petitioner made several objections to being questioned on this evaluation, including the "fact that this evaluation was done on me a month after I left.  It's dated a month after I left.  It has no relevancy, no legal relevancy, in my file.  I don't know who put it there or how it got there.  It wasn't there in my file when I left."  "I didn't write this."  "I didn't fill this out."  Although 
the hearing officer explained to the petitioner "I want you to understand what you read off that document is not in evidence either because the document itself is not in evidence," he still required petitioner to answer the questions by reading from the evaluation form.  
During petitioner's direct examination of Judy Schnuckel, the hearing officer, however, prohibited petitioner from reading from a document and questioning Schnuckel from a document that was not in evidence.  Here, by contrast, the hearing officer allowed respondent to cross-examine petitioner from a document not in evidence.  He specifically noted that the information read from the document was not in evidence and yet, over petitioner's objection, allowed the improper cross-

examination to proceed at length.  

Counsel for respondent additionally cross-examined petitioner about exhibit No. 5, the petitioner's employee separation notice, another document that was not admitted into evidence and not prepared by petitioner.  Again, counsel for respondent, over petitioner's objection, cross-

examined petitioner about the substance of the document with particular emphasis on the section indicating the reason for petitioner's termination.

Counsel then cross-examined petitioner about exhibit No. 7, a United States Equal Employment Opportunity Commission (EEOC) determination.  Petitioner communicated her objection to the use of the document although she did not use the magic "buzz words" in formulating what was clearly a "beyond the scope of direct" objection.  The objection was overruled.   In response to opposing counsel asking the court to admonish petitioner to answer the question regarding the EEOC document, she said: "Do I not have the right to object to a document being shown that I have not brought up."  That statement by petitioner, which communicated in lay terms a "beyond the scope of direct" objection, was not addressed.  Rather, the hearing officer allowed the respondent to continue cross-examination with the document, which had never been referenced in any previous testimony by petitioner or any other witness. 

We note that the hearing officer in his final ruling indicated he did not consider the EEOC determination.  He stated,  "So any of the evidence submitted in relation to Exhibit 7 was discounted in reaching this decision, as well as the question surrounding Exhibit 4, the rating of Complainant's job performance as dated May of '91."   Even though the hearing officer stated he did not consider these two exhibits, respondent's cross-examination of petitioner regarding exhibits Nos. 7 and 4 was extensive, and the hearing officer improperly overruled petitioner's objections to that cross-

examination.  Further, the hearing officer did not allow the petitioner to question her witnesses on similar documents that had not been admitted in evidence but, rather, repeatedly sustained respondent's objections.    

These errors were compounded by the ALJ's inconsistent rulings regarding the use of what petitioner refers to as "altered documents."  For example, during petitioner's case in chief, petitioner, acting as her own attorney, attempted to question witnesses regarding various documents that she had highlighted or made notes on to aid her in her presentation.  Respondent's counsel objected to the use of the documents.  Petitioner explained to the ALJ and counsel that she had made notations and highlighting on the document to serve as "flags" to remind herself of questions to ask the witness.  During the testimony of the first witness, Earlene Brown, counsel objected as follows:

"COUNSEL FOR RESPONDENT: I am going to object.  Ms. Anderson did show

us this exhibit moments ago.  Basically, my objection is there are handwritten portions.  This

is a series of photographs, xerox photographs with handwritten portions and certain portions

highlighted.  I don't know if the handwriting comes from Ms. Anderson.  They are conclusions

and I don't know what these photographs are being offered for, but she does have - I think

it's her writing, and certain portions are highlighted.  I would object to these photographs."   Later, during the testimony of another witness, counsel voiced another objection to petitioner's attempts to present a job requisition form:

"COUNSEL FOR RESPONDENT: Objection. It has certain portions that are also

highlighted in red and has handwritten - what looks like magic marker.  It's not in its original

condition."

The ALJ sustained counsel's objections and asked petitioner to remove the notations by cutting or tearing them from the exhibits.  He advised her to bring copies without notations in the future.

During cross-examination of petitioner by counsel for respondent, counsel proceeded to ask petitioner about similarly marked documents.  Petitioner objected, but to no avail.  The following exchange occurred:

"COUNSEL FOR RESPONDENT: Ms. Anderson, I will show you what I have

marked as Respondent's Exhibit No. 3 for identification.  I ask you if you recognize that.  You

are familiar with that document, aren't you?

PETITIONER: Pardon me?

COUNSEL FOR RESPONDENT: You are familiar with that document, aren't you?

PETITIONER: I have a problem with it, sir.  I see writing.  This document has

writing; It's an altered document.  I don't see how it could - I object to it being presented for

exhibit.  

COUNSEL FOR RESPONDENT: Ms. Anderson, my question is: Are you familiar

with that document?

PETITIONER: I cannot respond.  I object to this document because it has been an

altered document.

HEARING OFFICER: Well, you have to answer the question that he asked.

PETITIONER: I filed an application for employment; yes, I did that.

COUNSEL FOR RESPONDENT: And is this that application that you filled out?

PETITIONER: This is the application that's been altered and has writing on there and

notations, Exhibit 3.  * * *  It's an altered document.  I was told to dis- you objected and

disregarded my documents because they had writing on them, my writing.  And now this has

somebody else's writing, I don't even know whose it has.  This is an altered document.

HEARING OFFICER: But you recognize the document? 

PETITIONER: I recognize it as an application form and I recognize --

HEARING OFFICER: All right."

Although petitioner repeatedly noted that counsel for respondent had objected to her use of similarly marked documents and that the ALJ sustained his objections, her objections to his use of marked documents were overruled.  The ALJ repeatedly admonished her to answer counsel's questions regarding the documents without asking him to remove the notations.   Petitioner objected to being questioned with these documents because she had previously been ordered by the ALJ to refrain from further questioning or use of similarly highlighted documents. 

Moreover, the ALJ erroneously regarded the markings on petitioner's document as a failure to satisfy the rules of evidence, as demonstrated by this exchange:

"HEARING OFFICER: You should have had one set of documents on which you had

made no markings, whether it be circles of handwriting for presentation — possible

presentation into evidence.  And you should have had a separate set of documents where you

flag it to yourself for your own personal use.  The fact that you didn't do that is now causing

problems.

PETITIONER: Okay.  What I cannot present in documents; I will just incorporate it

in my testimony, oral testimony.  * * *  Will that satisfy the Court?

HEARING OFFICER: Well, it's not a question of satisfying me; it's a question of

satisfying the rules of evidence."

As for both petitioner's and respondent's objections to certain documents because they contained highlighting or personal notes, those type of markings only affect the probative weight to be given to the documents, not their admissibility.  
Progress Printing Corp. v. Jane Byrne Political Committee
, 235 Ill. App. 3d 292, 306 (1992).  We note this is particularly true where, as in this case, the hearing is conducted before a single fact finder.  However, that evidentiary rule was not equally applied to both sides.  Respondent was allowed to question petitioner with documents that contained highlighting and notations while petitioner was not.

While we are cognizant of the additional challenges presented by proceedings involving 
pro se
 parties, we note that it is the judge's duty to ensure that the requirements of due process are met.  We find that the discrepancies in the hearing officer's treatment of the parties and the inconsistent application of evidentiary rules contributed to an atmosphere of futility at this hearing that gave petitioner an added disadvantage.  Petitioner is entitled to equal access to justice.  Where an administrative proceeding gives the petitioner a fair opportunity to be heard, including the opportunity to cross-examine witnesses and present evidence, generally this is considered sufficient to insure due process and a fair, impartial hearing.  
Sheehan v. Board of Fire & Police Commissioners
, 158 Ill. App. 3d 275, 283-84 (1987). The reviewing court's function is to insure that the administrative agency conducted a fair hearing, allowed only the introduction of competent evidence, and reached an objective, rational decision.  
Mead v. Board of Review
, 143 Ill. App. 3d 1088, 1095 (1986).  Reviewing courts may not interfere with the discretionary authority vested in an administrative body unless that authority is exercised in an arbitrary or capricious manner.  
Murdy
, 103 Ill. 2d at 391.  Petitioner's unheeded objections and the hearing officer's different evidentiary standards for both parties together with his erroneous rulings prevent us from concluding that petitioner received a fair and impartial hearing in this case.  Rather, we conclude the hearing was conducted in an arbitrary manner in that an unequal and erroneous application of the rules of evidence favored respondent and disadvantaged petitioner.

B. Dismissal of Petitioner's Claim of Age Discrimination   

We next address the merits of the Commission's dismissal of petitioner's claim of age discrimination.  We find that the hearing officer improperly entered a directed finding against petitioner.  The findings of an administrative agency are held to be 
prima facie
 true and correct. 735 ILCS 5/3-110 (West 1998).  It is not the function of a reviewing court to reweigh evidence or substitute its judgment for that of the trier of fact.  
Zaderaka v. Illinois Human Rights Comm'
, 131 Ill. 2d 172, 180 (1989).  
The decision of the administrative agency will be reversed either where it is legally erroneous or it is factually against the manifest weight of the evidence.  
Pepsi Cola General Bottlers, Inc.
, 137 Ill. App. 3d at 292.  "An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." 
 Robbins v. Board of Trustees of the Carbondale Police Pension Fund
, 177 Ill. 2d 533, 538 (1997).  Here, the Commission adopted the findings of the hearing officer, which concluded that petitioner failed to meet each element of a 
prima facie
 case of age discrimination.

In reviewing discrimination actions brought under the Illinois Human Rights Act, a three-part analysis first recognized in 
McDonnell Douglas Corp. v. Green, 
411 U. S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), and later adopted by the Illinois Supreme Court in 
Zaderaka v. Illinois Human Rights Comm'
, 131 Ill. 2d 172 (1989) is used.  First, in an age discrimination case, the employee must establish a 
prima facie 
case by a preponderance of evidence and show that: (1) she is a member of a protected class; (2) she was performing satisfactorily; (3) she was discharged despite the adequacy of her work; and (4) a similarly situated employee who was not a member of the protected group was not discharged. 
 Marinelli v. Human Rights Comm'n
, 262 Ill. App. 3d 247, 253 (1994); 
Folbert v. Department of Human Rights
, 303 Ill. App. 3d 13, 25 (1999).  "If a 
prima facie
 case is established, a rebuttable presumption arises that the employer unlawfully discriminated against petitioner.  Second, to rebut the presumption, the employer must articulate, not prove [citation], a legitimate, nondiscriminatory reason for its decision."  
Zaderaka
, 131 Ill. 2d at 179.  Finally, 
the burden then returns to the employee to prove by a preponderance of the evidence that the employer's articulated reason was not its true reason, but was instead a pretext for unlawful discrimination.  
Zaderaka
, 131 Ill. 2d at 179.  

In this case, the hearing officer found that petitioner presented evidence to support each element of a 
prima facie
 case of age discrimination, but the weight of the evidence at the hearing negated the fourth element and required a directed finding.  We believe the hearing officer applied an incorrect legal standard regarding the fourth element of petitioner's 
prima facie
 case.  A review of the record discloses petitioner presented sufficient evidence at this stage of the proceeding to establish a 
prima facie
 case.  She was a member of the protected class and further testified that she was performing her job satisfactorily when respondent discharged her.  Moreover, the hearing officer found that petitioner presented sufficient evidence to support the first three elements of a 
prima facie
 case of age discrimination.  As to the fourth element, it is undisputed that respondent hired Schnuckel to replace petitioner.  In ruling against petitioner, the hearing officer noted that Schnuckel was also a member of the protected class and this negated the fourth element of the 
prima facie
 case thereby supporting a directed finding in favor of respondent.

While older cases have required that the discharged employee establish as part of the 
prima facie
 case that she was replaced by someone not a member of the protected class (
Whitaker v. Human Rights Comm'
, 184 Ill. App. 3d 356, 360 (1989)), recent cases have taken a more flexible approach.  In 
ISS International Service System
, 
Inc.
 
v. Human Rights Comm'
, 272 Ill. App. 3d 969, 978 (1995), 
the court, in a well-reasoned decision, held that an employee in an employment discrimination case need not prove that she was replaced by a member of an unprotected class to establish a 
prima facie
 case.  In the insightful words of Justice Cerda, "an employee could be replaced by someone of the same class for a reason consistent with discharge based on unlawful discrimination.  One such reason could be to strengthen the employer's defense against charges filed by the discharged employee."  
ISS International Service Systems, Inc.
, 272 Ill. App. 3d at 978.  Some courts have found that an employee satisfies the fourth element of the 
prima facie
 case by simply showing that the employer sought to replace the employee.  
Willis v. Department of Human Rights
, 307 Ill. App. 3d 317, 322 (1999); 
Southern Illinois Clinic, Ltd. v. Human Rights Comm'n
, 274 Ill. App. 3d 840, 847 (1995).  Other courts have adopted a totality of the circumstances approach.  
Wal-Mart Stores, Inc. v. Human Rights Comm'
, 307 Ill. App. 3d 264, 268 (1999). 
 

Here, under any of these more recent approaches, petitioner at this stage of the hearing satisfied the fourth element of her 
prima facie
 case for age discrimination.  Schnuckel replaced petitioner and, although she was a member of the protected class, she was 13 years younger than petitioner.  This provides direct evidence that respondent replaced petitioner with a much younger employee.  Moreover, other testimony at the hearing revealed that younger similarly situated employees in the department were treated better and not discharged.  Thus, there was evidence petitioner was replaced and her replacement was 13 years younger.  There was evidence that other similarly situated employees, who were not members of the protected class, were not discharged and were treated better.  Based on the record there was evidence the petitioner was replaced with someone significantly younger and experienced treatment more adverse than her younger, similarly situated coworkers.  

We believe that, when applying the correct legal standard, petitioner satisfied the fourth element of her 
prima facie 
case.  In finding that the fact that petitioner was replaced by a member of the protected class negated the fourth element of the 
prima facie
 case, the hearing officer applied an incorrect legal standard.  The Commission adopted the ruling of the hearing officer, who applied an incorrect legal standard for petitioner's burden of proving by a preponderance of the evidence a 
prima
 
facie
 case of age discrimination.  Therefore, 
its decision to affirm the hearing officer's directed finding was against the manifest weight of the evidence and legally erroneous. 

III. CONCLUSION

Having concluded that petitioner by a preponderance of the evidence established a 
prima facie
 case of age discrimination, we reverse the directed finding in favor of respondent and remand for a continuation of petitioner's hearing.  Once a 
prima facie
 case of discrimination is established, as we find was established by petitioner here, then "a rebuttable presumption arises that the employer unlawfully discriminated against" the complainant.  
Zaderaka
, 131 Ill. 2d at 179.  To rebut this presumption the employer "must articulate, not prove [citation], a legitimate, nondiscriminatory reason for its decision."  
Zaderaka
, 131 Ill. 2d at 179.  On remand, respondent will be given the opportunity to present its case.  The hearing will address the next two steps of the 
McDonnell Douglas
 test and, first, give respondent an opportunity to articulate legitimate nondiscriminatory reasons for petitioner's discharge.  If respondent satisfies this burden, petitioner then must prove by a preponderance of the evidence that respondent's articulated reason was not its true reason, but was instead a pretext for unlawful discrimination.  
Zaderaka
, 131 Ill. 2d at 179.  

Consistent with our conclusions above, the hearing should conform with principles of fundamental fairness and due process.  The rules of evidence should apply equally to both petitioner and respondent.  The rules of evidence as applied in civil cases in the circuit courts of this state shall be followed.  5 ILCS 100/10-40(a) (West 1998).  Evidence not admissible under those rules of evidence may be admitted, except where precluded by statute, if the evidence is of a type commonly relied upon by reasonable, prudent men and women in the conduct of their affairs.  5 ILCS 100/10-

40(a) (West 1998).

For the foregoing reasons, the order of the Commission is reversed and remanded for the hearing to be conducted consistent with this opinion.

Reversed and remanded.  

RAKOWSKI and TULLY, JJ., concur.