2025 IL App (1st) 241105-U
Order filed: April 17, 2025

FIRST DISTRICT
FOURTH DIVISION

No. 1-24-1105

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JONNY SMITH, | ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) ) | Cook County. |
| v. | ) ) | No. 23 CH 5940 |
| SAMEER VOHRA, in His Official Capacity as Director of the Illinois Department of Public Health, | ) ) ) | Honorable Anna M. Loftus, Judge, presiding. |
| Defendant-Appellee. | ) | |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Dismissal of plaintiff's administrative complaint is affirmed, where plaintiff did not show that dismissal of the complaint resulted from improper evidentiary ruling or that administrative investigation was inadequate or reached improper conclusion.

¶ 2   Plaintiff-appellee, Jonny Smith, brought this action *pro se* for administrative review in the circuit court against defendant-appellee, Sameer Vohra, in his official capacity as Director of the Illinois Department of Public Health, after plaintiff's administrative complaint was dismissed in a final administrative order. The circuit court affirmed that dismissal and plaintiff appealed. For the following reasons, we affirm.

¶ 3    The record indicates that plaintiff initially filed a complaint with the Illinois Department of Public Health (Department) on or about May 13, 2021. That complaint related to C.G., a recently deceased resident at the Prairie Oasis nursing home in South Holland, Illinois. The record shows that C.G. and plaintiff had previously lived together for 10 years. In general, plaintiff's complaint alleged that Prairie Oasis rendered inadequate nursing care by allowing C.G. to accumulate pressure wounds, failing to shower her regularly, and failing to change her pressure boots. Plaintiff also alleged that Prairie Oasis improperly lost C.G's glasses, blanket, and clothing. The complaint was filed pursuant to section 3-702(a) of the Nursing Home Care Act (Act), which in relevant part provides that a "person who believes that this Act or a rule promulgated under this Act may have been violated may request an investigation." 210 ILCS 45/3-702(a) (2022).

¶ 4    The Department investigated this complaint shortly thereafter, sending Ngozika Ugonna, a surveillance nurse, to conduct an onsite investigation of Prairie Oasis. The Department then made a formal determination that plaintiff's allegations were "invalid" under section 3-702(d) of the Act (210 ILCS 45/3-702(d) (2022)) as the "Department determines that there is no credible evidence that there has been a deficiency (non-compliance with the Act or rules & regulations) relating to the complaint allegation." It then mailed notice of that outcome to plaintiff in accordance with section 3-702(e). 210 ILCS 45/3-702(e) (2022). In that notice, plaintiff was informed that he could request a hearing before an administrative law judge (ALJ), as permitted by section 3-702(g) of the Act which provides that a "complainant who is dissatisfied with the determination or investigation by the Department may request a hearing." 210 ILCS 45/3-702(g) (2022). Plaintiff was further informed as follows:

"Hearings are limited to whether or not the Department conducted a proper investigation or whether the evidence supports the Department's determination. As the

Complainant, you bear the burden of proving, with legally sufficient evidence, specifically how or why the Department's investigation was inadequate. If you successfully prove your case to the Administrative Law Judge, then the Department may be ordered to re-investigate your complaint or to reconsider its determination. No other remedies are available from the Department under the Nursing Home Care Act."

¶ 5     A hearing was held on March 1, 2023, at which the ALJ heard testimony from plaintiff and Ugonna. Plaintiff, acting *pro se*, was allowed to testify in a narrative format. Nevertheless, relevance and other objections to plaintiff's testimony were repeatedly sustained by the ALJ and he was repeatedly asked to confine his testimony to the specific allegations of his complaint and the Department's investigation thereof. In general, plaintiff testified as to the nature of his concerns regarding C.G.'s care and treatment at Prairie Oasis prior to her death on or about May 11, 2021, and his objections to the nature of the Department's investigation of his complaint. In addition, plaintiff attempted to admit into evidence and rely upon several photos of C.G. that he purportedly took shortly before her death. The State objected to these photos on the grounds plaintiff failed to lay a proper foundation for their admission. During cross-examination, plaintiff conceded that he had no experience conducting surveys at healthcare facilities.

¶ 6     Ugonna testified that she was a registered nurse with degrees in nursing and public health and a certified federal and state health facility surveyor. Before becoming a surveillance nurse, she worked as a nurse in a long-term care facility for over five years, and she had experience caring for residents' pressure wounds. When she began working at the Department, she underwent four months of training that covered the applicable standards of care for residents at long-term care facilities. At the time she investigated Prairie Oasis, she had worked for the Department for over four years and had conducted roughly 400 investigations. Her prior investigations specifically

included investigations of complaints about pressure wounds, hygiene, and misappropriated property.

¶ 7    Ugonna's investigation into plaintiff's complaints occurred in the week after the complaint was made on May 13, 2021, and after C.G. died on May 11, 2021. To investigate plaintiff's allegations regarding C.G.'s wounds, Ugonna reviewed C.G.'s wound treatment records, interviewed Prairie Oasis's wound care nurse and director of nursing, and observed how staff cared for other residents' wounds. The medical records showed that C.G. was admitted with type 2 diabetes, a pressure ulcer in her sacral area, prior surgery on the skin, deep tissue damage to her right heel, and a history of peripheral vascular disease. The only wounds that Ugonna found mentioned in the records were open areas on the sacrum, left lateral ankle, and right heel, along with some scabs to bilateral lower extremities. The wound care nurse explained that C.G.'s skin was checked every week and that any noted skin issues were addressed immediately. The director of nursing explained that C.G.'s ulcer was unavoidable because C.G. did not eat, her lab values were off, and she was in and out of the hospital. She added that C.G. was monitored by a dietician and wound doctor and that C.G. had a care plan with interventions in place for her outer skin integrity. Finally, Ugonna's observation of other residents' wound care gave her no cause for concern. Based on her interviews, review of records, and observations, Ugonna did not believe that Prairie Oasis could have done more to prevent or mitigate C.G.'s pressure wounds.

¶ 8    Regarding C.G.'s showering schedule, Ugonna questioned the wound care nurse, reviewed C.G.'s shower log, and interviewed other residents. The wound care nurse explained that C.G. had scheduled shower days two times per week, which certified nursing assistants documented in the shower log. The shower log showed that C.G. was showered on April 10, April 13, April 17, April 20, and April 27, 2021, and that she was receiving treatment to an open area on her sacral. The

other residents whom Ugonna interviewed confirmed that C.G.—like them—had scheduled shower days twice per week.

¶ 9    As to the complaint about the purported failure to properly change C.G.'s pressure boots, Ugonna observed other residents and talked to them about the care that they were receiving. Ugonna noted that the other residents with wounds had their own pressure boots in place. Based on her wound care observations and interviews with the other residents, Ugonna had no concerns about Prairie Oasis's wound care.

¶ 10    Finally, concerning plaintiff's allegations regarding C.G.'s lost items, Ugonna spoke to the director of nursing. The director of nursing produced a box of clothing, explaining that C.G.'s sister had taken the glasses and was donating the rest of the clothing to the facility. C.G. did not have a blanket. Ugonna also reviewed C.G.'s progress notes, which corroborated the director of nursing's explanation. All of these findings and conclusions were included in Ugonna's written report.

¶ 11    At the conclusion of the hearing, the ALJ admitted into evidence Ugonna's report, Ugonna's interview notes, and Prairie Oasis's progress notes and shower notes for C.G. The ALJ also conditionally admitted plaintiff's photographs of C.G. The matter was then continued for the entry of a final written decision.

¶ 12    On May 30, 2023, the ALJ issued a written report and recommendation to the Director of the Department to dismiss plaintiff's case. He reasoned that plaintiff failed to provide any evidence that the investigation was inadequate, submitted nonmedical testimony, and offered only his own lay speculation in support of his assertions. Ugonna, on the other hand, testified about her credentials, how she conducted her investigation, and what records she reviewed. Thus, the ALJ concluded, plaintiff failed to prove by a preponderance of the evidence that the Department's

investigation was inadequate. The ALJ also explained that he declined to consider plaintiff's photographs because plaintiff failed to lay a foundation for their admissibility. On June 13, 2023, the Director of the Department entered a final order adopting the ALJ's findings and conclusions and dismissed plaintiff's case, which reflected the Director's final administrative decision.

¶ 13    Plaintiff brought an action for judicial review in the circuit court on June 23, 2023. In written arguments presented to the circuit court, plaintiff again attempted to introduce into evidence certain photos he claimed to have taken of C.G. On May 17, 2024, the circuit court entered a final judgment affirming the Director's decision. Therein, the court also refused to consider plaintiff's photos as they were not entered into evidence below and were therefore not contained in the administrative record. Plaintiff filed a notice of appeal of the circuit court's judgment on May 22, 2024.

¶ 14    As noted above, plaintiff's initial complaint and his request for an administrative hearing were both made pursuant to section 3-702 of the Act. 210 ILCS 45/3-702 (2022). Administrative Code provisions implementing that provision provide: "Dissatisfied Complainants pursuant to this Section shall have the opportunity to contest the adequacy of the Department's investigation and its determination as to whether the complaint was valid, invalid, or undetermined and also the Department's determination as to whether to issue any violation as a result of the determination. Whenever 'determination' is used in this Section, it shall include any investigation resulting in the determination." 77 Il. Adm. Code 100.6(e) (2022). "Dissatisfied Complainants pursuant to this Section do not have the opportunity to contest any other determinations or decisions of the Department regarding the adequacy and completeness of the investigation." 77 Il. Adm. Code 100.6(f) (2022). "Complainants pursuant to this Section shall carry the burden to prove, by a preponderance of the evidence, that the aforesaid determinations of the Department were

improper." 77 Il. Adm. Code 100.6(h) (2022). "The rules of evidence and privilege as applied in civil cases in the circuit courts of this State shall be followed." 77 Il. Adm. Code 100.13(j) (2022).

¶ 15    Furthermore, pursuant to the Act, "[f]inal administrative decisions after hearing shall be subject to judicial review exclusively as provided in the Administrative Review Law." 210 ILCS 45/3-713(a) (West 2022). The Illinois Administrative Review Law, in turn, provides that judicial review of an administrative decision "shall extend to all questions of law and fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct. 735 ILCS 5/3-110 (West 2022). Furthermore, our supreme court has stated:

> "The applicable standard of review—which determines the extent of deference afforded to the administrative agency's decision—depends upon whether the question presented is a question of fact, a question of law, or a mixed question of law and fact. [Citations.] Rulings on questions of fact will be reversed only if against the manifest weight of the evidence. [Citation.] In contrast, questions of law are reviewed *de novo* [citation], and a mixed question of law and fact is reviewed under the clearly erroneous standard [citations]. We further note that, under any standard of review, a plaintiff to an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden." *Marconi v. Chicago Heights Police Pension Board*, 225 Ill.2d 497, 532-33 (2006).

¶ 16    Finally, "[i]n administrative cases, our role is to review the decision of the administrative agency, not the determination of the circuit court." *Id*. at 531.

¶ 17    On appeal, we first consider plaintiff's argument that the ALJ improperly refused to admit the photos of C.G. into evidence at the administrative hearing. We disagree.

¶ 18    As noted above, at the administrative hearing "rules of evidence and privilege as applied in civil cases in the circuit courts of this State shall be followed." 77 Il. Adm. Code 100.13(j) (2022). "In civil cases in Illinois, the basic rules of evidence require a proponent of documentary evidence to lay a foundation for the introduction of that document into evidence." *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 42 (2000). "Evidence must be presented to demonstrate that the document is what its proponent claims it to be." *Id*. at 42. "Without proper authentication and identification of the document, the proponent of the evidence has not provided a proper foundation and the document cannot be admitted into evidence." *Id*. This requirement may be met by providing an affidavit or by presenting testimony. *Cordeck Sales, Inc. v. Construction Systems, Inc*., 382 Ill. App. 3d 334, 384 (2008).

¶ 19    " 'In general, photographs are admissible into evidence if they are identified by a witness who has personal knowledge of the subject matter depicted in the photographs and the witness testifies that the photographs are a fair and accurate representation of the subject matter at the relevant time.' " *Lambert v. Coonrod*, 2012 IL App (4th) 110518, ¶ 29 (quoting *People v. Martinez*, 371 Ill. App. 3d 363, 380 (2007)). Whether to admit a photograph rests within the sound discretion of the tribunal, and we will not reverse that decision absent an abuse of discretion. *Id*.

¶ 20    Here, there is no question that plaintiff had personal knowledge of C.G., the subject matter of the photos he attempted to introduce into evidence at the hearing. However, the record also clearly shows that the photographs did not contain time or date stamps indicating when those photos were taken, and plaintiff himself had difficulty identifying or clarifying that information in his testimony at the hearing. Moreover, plaintiff never offered any testimony or other evidence

that the photos constituted a fair and accurate representation of the subject matter at the relevant time. On this record, we cannot conclude that the ALJ abused its discretion in refusing to admit these photos into evidence.

¶ 21    We next address and reject plaintiff's contention that the circuit court erred in refusing to admit into evidence or otherwise consider the photos of C.G. subsequently presented in the circuit court. We reiterate that upon administrative review, "[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court." 735 ILCS 5/3-110 (West 2022). As such, the "statute limits our review to the record before us; we may not hear new or additional evidence." *Robbins v. Carbondale Police Pension Fund of City of Carbondale*, 177 Ill. 2d 533, 538 (1997); *Marconi*, 225 Ill. 2d at 532 ("The statute, however, specifically limits judicial review to the administrative record."). As such, the circuit court properly refused to allow plaintiff to introduce any new evidence in support of his complaint seeking administrative review.

¶ 22    We next consider plaintiff's attempt to have this court consider in our review copies of these same photos and other documents he has attached as exhibits to his appellate brief but that were not included in the administrative record. As an initial matter, the same reasoning as above applies and precludes this request. In addition, to the extent that some of those documents were never even presented to the circuit court, we note documents not submitted to the circuit court and not properly a part of the record on appeal cannot be considered on appeal. *Jackson v. South Holland Dodge*, *Inc*., 197 Ill. 2d 39, 55 (2001). Therefore, we will not consider those exhibits in our review.

¶ 23    We next turn to plaintiff's primary substantive contention that the ALJ improperly rejected his assertion that the Department did not complete an adequate investigation into his complaint.

¶ 24     We agree with the State that what constitutes an adequate investigation under section 3-702(a) of the Act does not appear to have been specifically addressed in any prior appellate decision, but it could either be viewed as either a question of fact or a mixed question of law and fact. Under either standard, we conclude that plaintiff has failed to demonstrate any error in the Department's dismissal of his complaint as to the adequacy of the investigation.

¶ 25     A decision is against the manifest weight of the evidence only when the opposite conclusion is clearly evident. *Marconi*, 225 Ill. 2d at 534. The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative finding; if the record contains any evidence to support the agency's decision, it should be affirmed. *Magett v. Cook County Sheriff's Merit Board*, 282 Ill. App. 3d 282, 287 (1996). In contrast, where the issue is a mixed question of law and fact asking the legal effect of a given set of facts, a reviewing court must determine whether the established facts satisfy the applicable legal rules. *Board of Education of City of Chicago v. The Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 16. We review a conclusion on a mixed question of law and fact for clear error. *Id*. "Review for clear error is significantly deferential to an agency's experience in construing and applying the statute that it administers." *Id*. ¶ 18. Thus, a decision will be found to be "clearly erroneous" only when the reviewing court has a definite and firm conviction that a mistake has been committed. *Id*. ¶ 16.

¶ 26     Here, plaintiff offered only his own lay opinions and beliefs as to what alternative areas of investigation should have been pursued. For example, he complained that neither C.G. nor he himself were ever interviewed. However, as he admitted at the hearing, plaintiff has no experience conducting surveys or investigations at healthcare facilities. On appeal, plaintiff—without citation

to any supporting authority—simply asserts that the "investigation was defective, and lack [sic] any due diligence [and] shows it was not anything like what is mandated by law."

¶ 27    In contrast, at the hearing the Department offered testimony from Ugonna, a surveillance nurse who previously worked in a long-term care facility, completed training on the applicable standards of care for residents in such facilities, and had previously conducted roughly 400 investigations, some involving the precise types of allegations that Smith made in his complaint. Ugonna then explained how she typically investigated similar allegations in the past and described how she followed the same methods with Prairie Oasis, which included interviewing residents and staff, personally observing the nursing care of other residents, and reviewing relevant records concerning C.G. Her testimony included evidence as to her investigation into plaintiff's claims regarding C.G.'s medical care and C.G.'s purportedly lost items of personal property. She also specifically explained how interviewing C.G. was impossible, as she had died before plaintiff ever submitted his complaint to the Department.

¶ 28    Whether viewed as a question of fact or a mixed question of law and fact, we cannot say on this record that the Department erred in rejecting plaintiff's assertions and in dismissing his complaint. The record clearly contains some evidence supporting the Department's decision, so as to satisfy the manifest weight of the evidence standard. In addition, nothing in this record leads us to a definite and firm conviction that a mistake has been committed, thus satisfying the clear error standard.

¶ 29    Finally, we note that both below and again on appeal plaintiff also raises issues concerning previous complaints he purportedly made concerning C.G.'s care and more broadly asks for a "review of the 'conditions and circumstances' of the death of 'C.G.' " However, as noted above these administrative proceedings specifically involve the complaint plaintiff filed on May 13,

2021, in which he specifically alleged only that Prairie Oasis rendered inadequate nursing care by allowing C.G. to accumulate pressure wounds, failing to shower her regularly, and failing to change her pressure boots. Plaintiff also alleged that Prairie Oasis improperly lost C.G's glasses, blanket, and clothing. No other allegations were made in that complaint, and the complaint was specifically filed pursuant to section 3-702(a) of the Act. 210 ILCS 45/3-702(a) (2022). And, as we also noted above, the regulations implementing that statute specifically provide that: "Dissatisfied Complainants pursuant to this Section shall have the opportunity to contest the adequacy of the Department's investigation and its determination as to whether the complaint was valid, invalid, or undetermined and also the Department's determination as to whether to issue any violation as a result of the determination. Whenever 'determination' is used in this Section, it shall include any investigation resulting in the determination." 77 Il. Adm. Code 100.6(e) (2022). "Dissatisfied Complainants pursuant to this Section do not have the opportunity to contest any other determinations or decisions of the Department regarding the adequacy and completeness of the investigation." 77 Il. Adm. Code 100.6(f) (2022). Plaintiff's requests in this regard are therefore well outside the scope of these proceedings, and we therefore refuse to further consider such matters.

¶ 30    For the foregoing reasons, we affirm the final administrative decision of the Department.

¶ 31    Affirmed.